UNITED STATES of America

v.

**William FIORE, Individually and d/b/a Fiore Trucking and Contracting Company, and as President and General Manager of Diamond Excavating and Hauling Inc.**

Crim. No. 71–208.

Civ. No. 17712.

United States District Court,
W. D. Pennsylvania.

Feb. 1, 1972.

Jay C. Waldman, Asst. U. S. Atty., Pittsburgh, Pa., for the Government.

Edward P. Zemprelli, Clairton, Pa., for defendant.

## FINDINGS OF FACT

WILLSON, Senior District Judge.

1. This matter is before the Court upon a Petition and Rule To Show Cause why defendant William Fiore, Individually and d/b/a Fiore Trucking and Contracting Company, and as President and General Manager of Diamond Excavating and Hauling Inc., should not be adjudged in civil and criminal contempt, filed by Richard L. Thornburgh, United States Attorney for the Western District of Pennsylvania and Peter Nash, Solicitor, United States Department of Labor.

2. On March 10, 1959, defendant herein was enjoined by this Court from violating the provisions of Sections 7 and 11 of the Fair Labor Standards Act (52 Stat. 1060, as amended), requiring the payment of proper overtime compensation to employees employed in excess of forty hours in a work week, and further required that appropriate records of wages, hours and other terms and conditions of employment be kept.

3. On April 19, 1962, this Court found the defendant herein in civil contempt of its aforementioned 1959 order and ordered the defendant to pay $1,-859.50 in back wages to fifteen then present or former employees; and further, the Court ordered the terms of the 1959 order to be continued and broadened its scope by enjoining the defendant from violating the minimum wage provisions of the Fair Labor Standards Act (29 U.S.C. § 206).

4. On April 29, 1965, this defendant was again brought before this Court and after hearing was adjudged guilty of civil and criminal contempt of this Court's aforementioned orders, was ordered to pay $15,000.00 in back wages, a $1,000.00 compensatory fine and a $1,000.00 punitive fine, and was further ordered to pay all court costs.

5. A full hearing was held on the instant matter on January 27, 28 and 31, 1972.

6. Defendant has continued to operate under various names and designations as aforesaid.

7. Defendant has engaged in trucking, hauling and providing in-plant services for various producers of goods for interstate commerce, including but not limited to the United States Steel Corporation Edgar Thompson and Clairton Works and the Jones & Laughlin Steel Company Marineway Yards.

8. The defendant's gross annual volume of business since 1968 has been in excess of $500,000.00, and defendant employs two or more employees engaged in commerce or in the production of goods for commerce.

9. For a period commencing on or about September 1, 1968 and continuing through October 1, 1970, defendant wilfully failed to pay his employees for all hours worked in performing truck driving duties between his central garage and the various work sites employees were assigned to, and further, defendant wilfully failed to compensate his employees for hours worked in returning the trucks to the garage from the work sites.

10. For a period commencing on or about September 1, 1968 and continuing through October 1, 1970, defendant wilfully failed to compensate his employees for all hours worked by virtue of the fact that defendant regularly, recurrently

and arbitrarily cut back the number of hours employees submitted at the end of each work week.

11. For a period commencing on or about September 1, 1968 and continuing through October 1, 1970, defendant wilfully, regularly and recurrently failed to pay his employees for an average of twelve hours in each work week.

12. The Court credits the testimony of United States Labor Department Comptroller Harold D. McFeely who testified that based on his computations, defendant owes $31,364.57 to seventy-nine of his present and former employees, as is more fully set forth in particularity in Exhibit A.

13. For a period commencing on or about September 1, 1968 and continuing through August 1, 1970, defendant wilfully failed to keep proper records of hours worked by his employees.

14. Defendant has wilfully failed to comply with this Court's previous orders and decrees.

15. The government, through the efforts of Mr. Harold D. McFeely, who spent 200 hours in investigating the violations in this case, was responsible for bringing these latest violations of this Court's orders by defendant to the Court's attention.

16. The Court finds that by virtue of defendant William Fiore's presence in Court on the occasion of the entry of this Court's adjudication of civil and criminal contempt in April, 1965, defendant well knew at all times material hereto the proscriptions this Court had entered upon him and the various business entities through which he did business.

## CONCLUSIONS OF LAW

The Court concludes that the findings and the record show by clear and convincing evidence and beyond a reasonable doubt the following:

1. Defendant has violated the minimum wage provisions of Section 6 of the Fair Labor Standards Act and the prior orders and decrees of this Court by failing to properly compensate his employees for all hours worked.

2. Defendant has violated the overtime provisions of Section 7 of the Fair Labor Standards Act by failing to properly compensate his employees for all hours worked in excess of 40 hours in a work week at one and a half times their regular rate of pay.

3. Defendant has violated Section 11 (c) of the Fair Labor Standards Act and the prior orders and decrees of this Court by failing to keep for two years proper records of hours worked by his employees.

4. That the government is entitled to be compensated for its costs of investigation, preparation and presentation of this case to the Court.

5. That defendant is again in criminal contempt of this Court for willfully and flagrantly violating the lawful orders of this Court as entered on March 10, 1959, April 19, 1962, and April 29, 1965, proscribing all of the acts set forth in Conclusions of Law, Numbers 1, 2 and 3 above.

6. That defendant is again in civil contempt of this Court for violating the lawful orders of this Court as entered on March 10, 1959, April 19, 1962, and April 29, 1965, proscribing all of the acts set forth in Conclusions of Law, Numbers 1, 2 and 3 above.

It must further be noted that the defendant has engaged in a pattern and practice of labor violations over a period of 13 years. This case constitutes defendant's fourth appearance before this Court. Because of the continued and flagrant nature of the violations, this Court believes that the imposition of a term of imprisonment is mandated.

## MEMORANDUM

At the conclusion of the trial in the instant case, my decision was orally announced from the Bench. Government's counsel was instructed to submit detailed findings and conclusions which have been filed and are incorporated herein.

The following memorandum on the issues in this case is inserted by the Trial Judge for emphasis and clarity.

On November 16, 1959, William Fiore, individually and doing business as Fiore Trucking and William Fiore Contracting Company, was enjoined by this Court from violating the provisions of the Fair Labor Standards Act. The injunction required the defendant to abide by the overtime provisions of the statute as well as directing him to make, keep and preserve records of his employees and of the wages, hours and other conditions and practices of employment maintained by him. This was a consent judgment. The consent was signed by William Fiore, individually, and by Edward P. Zemprelli, Esq., his then and present counsel.

On April 19, 1962, a second judgment was entered against this same defendant, William Fiore. He was directed to pay a compensatory fine of $400.00 for the Government's costs of investigation. The original decree entered on November 16, 1959, was broadened to enjoin the defendant from violating the minimum wage requirements of the Act, and this decree also directed Fiore to pay some $1839.00 to fifteen employees as restitution of wages wrongfully withheld. In this adjudication, William Fiore was guilty of contempt of Court for failure to abide by the 1959 Order. This decree was also consented to and signed by William Fiore.

For the third time, William Fiore was brought before this Court for violating the previous decrees, and upon a three day hearing this Member of the Court found:

" . . . [T]he defendant has wilfully and flagrantly violated the judgment of this Court entered on November 16, 1959, and the order of this Court entered April 19, 1962, in Civil Action No. 17712, in the particulars as alleged in the Petition for Adjudication of Civil and Criminal Contempt filed herein, and the Court having been advised that the defendant has made restitution of back wages amounting to $15,000.00 incurred as a result of his wilful contempt of Court. . . ."

My Order of April 29, 1965, speaks for itself, but in that judgment defendant was adjudged guilty of criminal and civil contempt of court. He was directed to pay a punitive fine of $1000.00, as well as a compensatory fine of a similar amount.

Apparently there was no further investigation of this defendant's activities until the instant investigation. In the instant case at least nine former employees testified to overtime hours for which they were not compensated. Much of the evidence related to a requirement by Mr. Fiore that truck drivers report at his Elizabeth garage at 7:00 A.M. for the purpose of checking trucks, i. e., tires, gas and oil, and brakes, prior to hauling work at the Edgar Thompson Plant which commenced at 8:00 A.M. It took these drivers 1 to 1½ hours to reach the steel plant where they and the truck were employed for eight hours, and on most occasions returned to the Elizabeth garage during heavy periods of traffic between 4:00 and 5:00 P.M. which in turn required another 1 to 1½ hours driving time. It is to be noted that the Fiore garage held but three vehicles, but Fiore owned about thirty vehicles. Witnesses spoke of difficulty in starting these trucks in the wintertime, as they were parked outside in the open parking lot. Fiore's contention was that driving to the steel plant from his garage was merely for the convenience of the truck drivers. The Court finds this statement incredible, and defendant's position in this regard is unacceptable. It is my finding that an employee reporting at the Fiore garage at 7:00 A.M. for the purpose of checking over his vehicle and on many occasions requiring towing to start his vehicle and driving it to the steel plant for the purpose of an eight-hour tour of duty, and then returning the truck to his employer's garage for overnight storage, is entitled to be compensated for his driving to and from the steel plant.

It is to be noticed in this regard, as well as in the other facets in this case, that the nine witnesses produced by the Government all testified to hours of employment for which they were not compensated. For the defendant many witnesses testified to the contrary. This is not unusual in this type of case, but in observing these witnesses on the stand, it was apparent to me as Trial Judge that several of defendant's witnesses were under pressure to testify as they did. The testimony of one, John Bochiba, called by defendant as his last employee witness is an example. This man testified on direct examination that he had been fully compensated for all his hours of employment by the defendant. Yet on cross-examination it developed that he had answered an inquiry from the Wage and Hour Division in his own handwriting to the effect that:

"There was a lot of paydays when I would turn in 60 or 65 hrs. and there would be a note where Mr. Fiore was cutting my pay back to 40 or 45 hours. One wk. I had a breakdown at Breezewood and turned in 80 hrs. When I got my pay it was cut from 80 hrs. to 30."

This witness's testimony reveals the unreliability of the testimony of other witnesses called by the defendant.

The defendant, Fiore's, contemptuousness is shown by his own testimony as well as that of his secretary, Dorothy Hill. This man is intelligent though of little formal education. He is successful in his business which grosses close to a million dollars a year. He has had three prior directives of this Court, as well as of the Government investigators, to keep and maintain records for at least two years. There is absolutely no record in his office during the entire period under investigation of the hours of work turned in by his many employees. From the commencement of this case up to and including the present his truck drivers all turned in their own weekly hours of work on slips of paper. From the hours turned in, the payroll was made. Of course, the amount paid each man was maintained in separate ledgers, but the paper slips of the hours turned in by each man were maintained but three months. Thus there is no record which verifies defendant's contention that he has fully compensated his men. Under these circumstances, the investigation made by the Government witness, Harold D. McFeely, and his computation of unpaid compensation due Fiore employees is accepted as credible and is the best evidence of the damages incurred by the Fiore employees. See Mitchell v. Mitchell Truck Line, Inc., 5 Cir., 286 F.2d 721 (1961). It is to be emphasized that Fiore has no records which show the hours of work claimed and turned in by the employees during the investigative period. The situation is similar to the statement found in the opinion, Mitchell v. Riley, 5 Cir., 296 F.2d 614, 615 (1961), where the statement is:

"Riley admittedly failed to preserve the daily time slips as he was required to do under 29 U.S.C.A. § 211(c) and 29 C.F.R. (1961 Supp.), Sec. 516.6."

This failure to keep records and the destruction of the weekly time slips by the defendant, Fiore, is inexcusable and indicates the arbitrary attitude on his part and shows his criminal intent to violate the prior injunctions of this Court. It is obvious that the defendant has made considerable profit because of his failure to compensate his employees as required by the Fair Labor Standards Act. His failure to keep records and his failure to compensate his employees as required by the statute were willful and contemptuous. He certainly has been aware of the requirements of the statute in all respects. The instant finding of criminal contempt is a second violation of my previous orders. Thus a jail sentence is proper as well as a substantial fine. See United States v. B. & W. Sportswear, D.C., 53 F.Supp. 785.