470 F.2d 1149
 20 Wage & Hour Cas. (BN 1034, 69 Lab.Cas. P 32,811
 James P. MITCHELL, Secretary of Labor, United States Dept. of Labor
v.
William FIORE, Ind. and d/b/a Fiore Trucking Company and
William Fiore Contracting Company, Appellant.
The UNITED STATES
v.
In re William FIORE, Individually and doing business as
Fiore Trucking and William Fiore Contracting
Company, Appellant.
 Nos. 72-1232, 72-1233.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 8, 1972.
Decided Dec. 12, 1972.
 
 Harold Gondelman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for appellant.
 Jay C. Waldman, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.
 Before VAN DUSEN, ALDISERT and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 Defendant appeals from the sentence and judgment filed February 2, 1972, in which he was ordered to pay various dollar amounts as fines and costs and to be imprisoned for 60 days, or for 30 days if he paid the "civil judgments and costs" within 30 days. The sentence and judgment are based on the district court's findings of fact and conclusions of law reported in 337 F.Supp. 972 (W.D.Pa. 1972). The district court decided that defendant was in civil and criminal contempt of an injunction previously issued against him pursuant to section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. Sec. 217 (1970). We have concluded that the district court's holding that defendant violated the injunction must be affirmed and that civil and criminal sanctions are appropriate, but, for the reason given below, we modify the financial penalties imposed by the district court.
 
 
 2
 Defendant is in the trucking business and his customers include United States Steel and Jones & Laughlin Steel Co. On November 11, 1959, he consented to an injunction that he be restrained from violating sections 15(a)(2) and 15(a)(5) of the F.L.S.A. by failing to pay overtime compensation as required by section 7 and by failing to keep records in accordance with section 11(c) of the F.L.S.A. and 29 C.F.R. 516. On April 19, 1962, defendant consented to the entry of a decree finding him guilty of civil contempt of the 1959 injunction, requiring restitution of wages wrongfully withheld, requiring payment of the Government's costs of investigation, and broadening the 1959 injunction to require compliance with the minimum wage provisions of section 6 of the F.L. S.A. (29 U.S.C. Sec. 206). Again on April 25, 1965, defendant was found to have violated the 1959 injunction as amended. Held in criminal and civil contempt, he was ordered to pay a punitive fine of $1,000., a compensatory fine of $1,000. covering the costs of investigation, and court costs, all in addition to the restitution of back wages of $15,000. which he made at that time.
 
 
 3
 The present appeal involves yet another violation of the above-mentioned injunction. On November 3, 1971, the Government petitioned the district court again to find defendant in civil and criminal contempt, alleging that he had violated the minimum wage, overtime, and record-keeping provisions of the injunction. The district court issued an order on November 5 that defendant show cause why he should not be found guilty of criminal and civil contempt. A trial to the court on these charges was held on January 27, 28, and 31, 1972. At the beginning of the trial, the Government made clear that it was proceeding under 18 U.S.C. Sec. 401(3) (1970) in submitting proofs on the issue of criminal contempt.[1]
 
 
 4
 Defendant's employees would put the time they worked each day on slips or time cards and submit these to defendant. There was uncontradicted evidence that defendant, upon being approached by Labor Department compliance officer McFeele, had retained these slips for only the previous three months, not for the requisite two years, see 29 C.F.R. 516.6(a)(1) (1972). The Government also introduced the testimony of nine former employees of defendant that he made a practice of wrongfully reducing the amount of time the drivers had indicated on the time slips and of failing to compensate drivers for time spent in preparing trucks for use and in driving trucks to and from their assigned work locations. This reduction of time would have made defendant's payroll records inadequate under 29 C.F.R. Sec. 516.2(a)(7) (1972); and the failure to pay drivers for this type of preparation and transportation time would have violated the minimum wage and overtime provisions of the F.L.S.A. McFeele testified that, based on interviews with 20 to 30 employees, he estimated the average time not compensated for was 1 1/2 hours per man per shift; applying this estimate to the number of employees and amount of time shown on the payroll records defendant did keep, McFeele arrived at the figure of $31,364.57 for the back wages due the 79 employees. Defendant denied all the Government's contentions except that he conceded he had only retained the time slips for the past three months. The district court concluded that the Government had established its contentions "by clear and convincing evidence and beyond a reasonable doubt" (337 F.Supp. at 974).
 
 
 5
 The district court entered judgments against defendant in the amounts of $31,364.57 for the benefit of the employees, $2,000. to cover the Government's costs of investigation, and $10,000. as "a remedial fine . . . as punishment for the civil contempt. . . ." The court also ordered defendant to pay court costs. Finally, the court sentenced the defendant to imprisonment as mentioned above.[2]
 
 
 6
 Defendant contends that the district court erred in its findings. On both the civil and criminal sides, our review of the record shows that the district court holding, that the Government proved its case by, respectively, clear and convincing evidence and beyond a reasonable doubt, was fully supported.[3] For the scope of our review, see United States v. Delerme, 457 F.2d 156, 160 (3d Cir.1972).
 
 
 7
 Defendant focuses his objections upon the procedure followed by the district court. A criminal contempt proceeding need not, as he suggests, be initiated by indictment.[4] The order to show cause[5] furnished him adequate notice under F.R.Crim.P. 42(b) and thus met the requirements of due process.[6] We have concluded that the proper procedures were observed in regard to the criminal contempt, and it was permissible for the district court to try the criminal and civil contempts together.[7] Since no disrespect to or criticism of, the trial judge was involved, see F.R. Crim.P. 42(b), it was proper that he try such contempt charges despite his having presided over defendant's three earlier trials.[8]
 
 
 8
 The defendant also argues that he was denied his right to a jury trial.[9] There is, of course, no such right in the trial of a civil contempt charge. In Cheff v. Schnackenberg, 384 U.S. 373, 379-380, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), the Supreme Court held that a person sentenced to six months' imprisonment for criminal contempt had no right to a jury trial because his offense was "petty." 18 U.S.C. Sec. 1(3) (1970), which the Court referred to in Cheff, defines as petty any offense whose penalty does not exceed six months' imprisonment or a $500. fine or both. In the present case, the $10,000. fine, although labled by the district court as "remedial," was neither coercive nor compensatory; rather, it was clearly punitive. Were we to let it stand defendant's contempt would not be petty and he might have been wrongly deprived of a jury trial. However, for the reason discussed below, we will vacate the $10,000. punitive fine. It could be maintained that, notwithstanding our action, defendant's offense, having been punished initially with a $10,000. fine, is forever branded as being not petty and thus warranting a jury trial. Two factors persuade us to the contrary. First, the district court viewed the criminal contempt as petty; this is indicated by the court's mistakenly denominating the fine as "civil" and "remedial." See Philipps v. United States, 457 F.2d 1313 (8th Cir.1972). Second, in applying the proposition in Frank v. United States, 395 U.S. 147, 149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969), that the severity of the penalty actually (as opposed to potentially) imposed best measures the seriousness of the offense we think that the sentence ultimately imposed is the sentence that is relevant. We note that we would not be the first Court of Appeals that has reduced a contempt sentence so as to comply with Cheff, rather than remand for jury trial. See Mirra v. United States, 402 F.2d 888 (2d Cir.1968).
 
 
 9
 Finally, in addition to challenging the correctness of the district court findings and the procedures, defendant contends that the district court's judgment and sentence were defective. He does not challenge the civil contempt fines concerning back wages, investigation costs, and court costs, except to suggest that they cannot be handed down in combination with sanctions for criminal contempt. The suggestion is incorrect. See Penfield Co. v. SEC, 330 U.S. 585, 593-594, 67 S.Ct. 918, 91 L.Ed. 1117 (1947).
 
 
 10
 Defendant directs at the sentence for criminal contempt three attacks. First, he calls our attention to section 216(a) of the F.L.S.A., which provides for imprisonment of up to six months for all violations of the Act except the first such violation. Had the Government proceeded against him under section 216(a), he would not be liable to imprisonment, never having been convicted a prior time under that section. According to defendant, to permit his imprisonment under 18 U.S.C. Sec. 401(3) (1970) for violating the injunction[10] would subvert the scheme of section 216(a) and rob him of constitutional rights.[11] This line of argument has been accepted by some courts,[12] but it was squarely rejected in the recent case of United States v. Fidanian, 465 F.2d 755 (5th Cir.1972).[13] There the court reasoned, first, that such a limitation on the power of the federal courts to punish violations of their own orders-which orders, we note, were expressly authorized in section 217-should be explicit. Second, punishment for criminal contempt does not reach the first offenders whom Congress intended to shield in section 216(a); rather, it affects only those who have already experienced a judicial proceeding under the Act, namely, the proceeding when the injunction was issued. As noted above, Fiore has been the defendant in three separate proceedings brought in 1959, 1962 and 1965 to compel him, inter alia, to comply with the provisions of the Act and has been held in contempt in two of these proceedings.
 
 
 11
 Defendant next asserts that the provision in the sentence whereby it would be reduced if he paid the fines within 30 days violates the doctrine set forth by the Supreme Court in Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L. Ed.2d 130 (1971), and Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L. Ed.2d 586 (1970). There the Supreme Court held that an indigent unable to pay a fine cannot be imprisoned for failure to do so. However, defendant did not maintain in the district court, and does not maintain here, that he is unable to pay. Instead he argues that if a poor man in his situation could not be imprisoned, then he too should not be imprisoned. We note that the Supreme Court in both the above cases was careful to disavow any implication that one capable of paying could not be imprisoned for wilful refusal to pay a fine. 401 U.S. at 400-401, 91 S.Ct. 668; 399 U.S. at 242 n. 19, 90 S.Ct. 2018. See United States ex rel. Griffin v. Martin, 409 F.2d 1300, 1302 (2d Cir.1969). Moreover, the situation here can be distinguished from the situations in Williams v. Illinois and Tate v. Short. The fine here is unconditional, and the prison sentence depends not on whether defendant eventually pays but on whether he pays within 30 days. Furthermore, criminal contempt differs from the statutory offenses in those cases because the punishment for contempt in this case was appropriately tailored to the offender. Therefore, the equal protection rationale relied on by the Supreme Court does not apply here.
 
 
 12
 Lastly, defendant contends that because the $10,000. "remedial fine" is neither coercive nor compensatory, which the Government concedes,[14] it must be punitive. Thus, the district court in effect punished the violation of its order with both a fine and imprisonment, even though Sec. 401(3) has been construed to authorize only one or the other. In re Bradley, 318 U.S. 50, 63 S. Ct. 470, 87 L.Ed. 500 (1943); Board of Education v. York, 429 F.2d 66 (10th Cir.1970). On this issue, we agree with defendant. While we could remand to the district court for resentencing, we possess the authority to revise the sentence ourselves.[15] In fact, in York, supra, the Court of Appeals corrected the same type of error that appeared here.
 
 
 13
 Because the Government does not urge that the $10,000. fine be imposed in addition to the imprisonment,[16] and because the record before us clearly indicates the appropriateness of some term of imprisonment,[17] we will modify the district court sentence and judgment as follows:
 
 
 14
 (a) Paragraph 2 shall read: "2. A civil judgment is entered against the said defendant, William Fiore, in the sum of $2,000.00 covering the investigative costs and preparation of the trial in this case."
 
 
 15
 (b) In paragraphs 1 and 2 under "IMPRISONMENT", this language shall be substitued for "February 15, 1972:" "the fifteenth day after the mandate or certified judgment in lieu of mandate is received by the Clerk from the United States Court of Appeals for the Third Circuit."
 
 
 16
 Each party shall bear his own costs in this court.
 
 
 17
 ALDISERT, Circuit Judge (dissenting in Appeal No. 72-1233).
 
 
 18
 I dissent from the affirmance of the sentence for criminal contempt because I do not believe the government may circumvent the provisions of a criminal statute, 29 U.S.C. Sec. 216(a),[1] which specifically limit imposition of the sentence of incarceration for wilful violation of the Fair Labor Standards Act, by proceeding in criminal contempt of a civil injunction.
 
 
 19
 There is no dispute concerning the chronological facts of this case. In 1959, William Fiore consented to an injunction which affirmatively required him to pay overtime compensation and keep records as required by law. He violated the terms of this injunction and, in 1962, consented to a decree of civil contempt. Again, in 1965, he was found to have violated the terms of the injunction, and was held in civil and criminal contempt. The instant proceedings emanate from still a third violation of the terms of the injunction. Thus, it can scarcely be contended that Fiore's conduct did not qualify as "willfully violat[ing] any of the provisions of section 215," and I do not suggest that it did not.
 
 
 20
 In the government's "detailed findings and conclusions [which were incorporated] in the District Court's Memorandum Opinion at its request," it was the government's position that Fiore "is again in criminal contempt for willfully and flagrantly violating the lawful orders of this Court and [Sections 6, 7 and 11(c) of the Fair Labor Standards Act, 29 U.S.C.]."
 
 
 21
 Moreover, in his opening statement at the hearing, Steven K. Ernst, the government prosecutor, stated:
 
 
 22
 We will submit, Your Honor, that the Government intends to prove that Mr. Fiore has willfully violated the judgment and the civil contempt-the civil and criminal contempt and we suggest that the only possible remedy in a situation like this is to show Mr. Fiore that this Court and the Government should not be taken so lightly, we suggest a very heavy fine and the possibility of a jail sentence at Your Honor's discretion.
 
 
 23
 My quarrel with the government's position, the district court's acceptance of the government's request that Fiore be imprisoned, and the majority's affirmance of this jail sentence, is that I read the Fair Labor Standards Act as providing that a wilful violator of the Act's provisions may not be sentenced to jail unless he has been previously convicted in a criminal proceeding under Sec. 216(a). Since the government never elected to proceed by criminal indictment, but relied only on the civil and criminal contempt procedure, 18 U.S.C. Sec. 401, the imposition of a jail sentence was contrary to law.
 
 
 24
 I am not persuaded by the contrary conclusion and rationale of the Fifth Circuit in United States v. Fidanian, 465 F.2d 755 (5th Cir.1972). There, the court held that "a limitation on a federal court's inherent power to punish violations of its own orders must be explicit." 465 F.2d at 757. Because the court found that "[s]uch an explicit limitation cannot be found in Section 216(a), nor can one be implied from it," it concluded that merely because an act may constitute both an indictable offense and a contempt does not afford a basis upon which to find a limitation on the contempt power. See Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935); United States ex rel. Brown v. Lederer, 140 F.2d 136 (7th Cir.), cert. denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944).
 
 
 25
 The Fifth Circuit's reliance on Jurney is misplaced. Admittedly, Mr. Justice Brandeis therein stated: "Punishment, purely as such, through contempt proceedings, legislative or judicial, is not precluded because punishment may also be inflicted for the same act as a statutory offense." 294 U.S. at 151, 55 S.Ct. at 380. However, this language must not be considered apart from certain important considerations present in that case and emphasized in the opinion, and not present in the case before us.
 
 
 26
 At issue in Jurney was the power of Congress to hold one in contempt for refusal to answer or produce papers in the face of a statute making such refusal a misdemeanor. Enactment of the criminal statute, according to Justice Brandeis, was prompted "because imprisonment limited to the duration of the [Congressional] session was not considered sufficiently drastic a punishment for contumacious witnesses." Thus, the criminal statute, R.S. Sec. 102, extended the amount of punishment available. In the case at bar, the statute limited the punishment, precluding incarceration for the first "violation of the subsection."
 
 
 27
 Moreover, present in Jurney was the phenomenon of two jurisdictions having power to punish: one, the federal court; the other, the Congress. This occasioned Justice Brandeis to reflect: "As was said in In re Chapman, supra, [166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154] 'the same act may be an offence against one jurisdiction and an offence against another; and indictable statutory offences may be punished as such while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being diverso intuito and capable of standing together."' 294 U.S. at 151-152, 55 S.Ct. at 380. This bipartite jurisdictional phenomenon is not present here. Here there is but one tribunal, the district court.
 
 
 28
 Similarly, Lederer has dubious precedential value because of various limitations inhering in the criminal statute there at issue. For its provisions to become effective, two preliminary exercises of administrative discretion were required. Indeed, the Lederer court purposely emphasized the discretionary features of the act: "The existence of the provision in subsection (b) permitting the Administrator to bring to the attention of the Attorney General, who in his discretion may institute appropriate criminal proceedings, does not preclude the right of a court to protect the dignity of its own injunction by punishing wilful and repeated violations of its order." 140 F.2d at 138. No mandatory two-step discretionary prerequisites are necessary to activate provisions of the criminal statute at bar.
 
 
 29
 Returning to the facts of this case, an injunction was issued commanding the defendant to obey the provisions of the F.L.S.A. By its terms, the defendant was obliged to do no more than what was required of any law-abiding citizen under similar circumstances. The terms of the injunction imposed no restriction upon him other than those imposed upon the public at large by the provisions of the F.L.S.A. If he wilfully violated the injunction, he thereby wilfully violated the provisions of the statute. Yet, had Fiore been prosecuted under Sec. 216(a), because he was not previously convicted of a violation of the F.L.S.A., he could not have been imprisoned. However, because the government proceeded under 18 U.S.C. Sec. 401, the general contempt statute providing that the court has the "power to punish by fine or imprisonment, at its discretion," Fiore received a jail sentence. Under these circumstances, may the government proceed by criminal contempt, where there is no limit to the use of incarceration, other than the length of the sentence, and defy the provisions of a criminal statute which explicitly limit incarceration to "an offense committed after the conviction of such person for a prior offense under this subsection," 29 U.S.C. Sec. 216(a)?
 
 
 30
 The resolution to this apparent statutory dilemma lay not in holding that Sec. 216(a) strips the district court of the power to vindicate wilful violations of its decrees. Nor is it suggested, as by the majority and Fidanian, that Congress contemplated imprisonment for conduct constituting a violation of an injunction, on the one hand, whereas, on the other, it expressly prohibited imprisonment for the identical conduct when examined in the context of an initial F. L.S.A. violation. Rather, a federal court's contempt power, Sec. 401, can be reconciled with the language of Sec. 216(a) simply by regarding the latter provision not as a limitation on the court's power to vindicate its authority, but merely as a restriction on the type of punishment to be meted out upon a finding of such contempt. That is, the district court could have imposed a fine on Fiore for violating its injunction. Thus, both the Fifth Circuit and the majority, in zealous haste to protect the contempt power, brush with too broad a stroke, and hence fail to effect the ready reconciliation Congress intended.
 
 
 31
 The Fifth Circuit's response to this seemingly obvious restriction on the type of punishment a court may impose under these circumstances once it exercises its unimpaired contempt power is the naked, conclusory statement: "Such an explicit limitation cannot be found in Section 216(a), nor can one be implied from it." 465 F.2d 757.
 
 
 32
 I do not have the slightest difficulty in refusing to accept this statement because, in my view, it is totally devoid of logic and bereft of reasonable statutory interpretation. When Congress provides that one cannot be imprisoned for a wilful violation of the Fair Labor Standards Act unless one has been previously convicted under a specific subsection, I find it disingenuous to suggest that the language of Sec. 216(a) is not an explicit statutory exception to the general power to imprison for contempt for committing the same act.[2]
 
 
 33
 The majority has confused that punishment permitted in contempt proceedings under Sec. 401 with that provided for criminal prosecutions under Sec. 216(a). Under the latter there may be incarceration only "after the conviction of such person for a prior offense under this subsection." True though it may be that Fiore is a veteran wilful violator of the terms of a civil injunctive decree, until such time as he is prosecuted and convicted under the criminal statute, Sec. 216(a), he may not go to jail. Congress has so declared in no uncertain terms.
 
 
 34
 Accordingly, I dissent and would vacate that portion of the sentence in the criminal contempt proceedings ordering incarceration.
 
 
 
 [1]
 See affidavit of Jay C. Waldman filed September 28, 1972, to which defendant has filed no counter-affidavit
 
 
 [2]
 The precise sentence and judgment is as follows:
 ". . . the Clerk will enter a civil judgment against the defendant, William Fiore, individually, and doing business as Fiore Trucking and William Fiore Contracting Company in the sum of $31,364.57 for the benefit of the employees named in the summary of unpaid wages attached to the Findings and Conclusions which are incorporated herein.
 "2. A civil judgment is entered against the said defendant, William Fiore, in the sum of $12,000.00, which in the aggregate embraces $2,000.00 covering the investigative costs and preparation of the trial in this case, and a remedial fine in the sum of $10,000.00 as punishment for the civil contempt of this Court.
 "3. The said defendant, William Fiore, shall pay the costs of the civil and criminal proceedings.
 IMPRISONMENT
 "The said William Fiore having been found guilty of criminal contempt of this Court by evidence beyond a reasonable doubt, and in accordance with the oral sentence pronounced from the Bench at the conclusion of the trial:
 "1. The said William Fiore is here-with sentenced to the custody of the Attorney General of the United States for imprisonment for a period of sixty (60) days to commence at Noon on February 15, 1972.
 "2. On payment of the civil judgments hereinbefore mentioned and costs within 30 days of February 15, 1972, the prison sentence will terminate at the expiration of the said 30 days."
 
 
 [3]
 Defendant raises several questions as to the accuracy of McFeele's figures. The Government having shown that employees performed work for which they were not compensated and produced evidence from which the extent of such work, as computed by the district court, could be reasonably inferred, the burden was on defendant to establish the precise amount of work. Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 687-688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The district court here had adequate grounds for rejecting defendant's evidence on this point. Moreover, here, as in Mount Clemens, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of Sec. 11(c) of the Act." Id. at 688, 66 S.Ct. at 1192
 
 
 [4]
 Green v. United States, 356 U.S. 165. 183-185, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); United States v. Bukowski, 435 F.2d 1094, 1099-1102 (7th Cir. 1970); Wilson, Criminal Contempt in the Federal Courts, 55 F.R.D. 102, 109 (D.C. 1970)
 
 
 [5]
 Defendant argues that the order to show cause shifted to him the burden of proving his own innocence. We reject this argument, as did the court in In re Van Meter, 413 F.2d 536, 538 (8th Cir. 1969). The record makes abundantly clear that ing the criminal contempt beyond a reasonable doubt
 
 
 [6]
 United States v. United Mine Workers of America, 330 U.S. 258, 295-298, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Backo v. Local 281, Carpenters, 438 F.2d 176, 181-182 (2d Cir. 1970); United States v. Bukowski, 435 F.2d 1094, 1102-1103 (7th Cir. 1970)
 Counsel for defendant, who did not handle the case before the district court, now maintains that the failure of the transcript to include the opening remarks of the Assistant United States Attorney prejudiced the defendant in preparing the appeal. In an affidavit submitted to this court, the Assistant United States Attorney states that in these remarks he made clear that the Government relied on 18 U.S.C. Sec. 401(3) (1970), which authorizes the federal courts to punish violations of their orders. We fail to see how defendant has been prejudiced by any possibly technical non-compliance with F.R.A.P. 10(e). The transcript contained numerous references to "criminal contempt;" and appellate defense counsel recognized the relevance of Sec. 401 (3), for his brief includes a discussion of it.
 
 
 [7]
 United States v. United Mine Workers of America, 330 U.S. 258, 298-301, 67 S.Ct. 677, 91 L.Ed. 884 (1947)
 
 
 [8]
 Nilva v. United States, 352 U.S. 385, 395-396, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); United States v. Conole, 365 F.2d 306, 308 (3d Cir. 1966)
 
 
 [9]
 Defendant never requested a jury trial. For present purposes, however, we will assume that he did not waive any rights in this respect
 
 
 [10]
 We again point out that defendant had notice that the Government was proceeding under section 401(3).: See p. 1151 above
 
 
 [11]
 For example, section 216(a) also provides for a fine of up to $10,000., and a violation of it would thus not fall within the category of petty offense as defined in 18 U.S.C. Sec. 1(3) (1970)
 
 
 [12]
 United States v. B & W Sportswear, 53 F.Supp. 785 (E.D.N.Y.1943); United States v. P & W Coat Co., 52 F.Supp. 792 (E.D.N.Y.1943). But see United States v. Harwoods, 46 C.C.H.Lab.Cas. p31,343 (E.D.Mich.1962)
 
 
 [13]
 Unfortunately the legislative history sheds no light on this issue. A provision authorizing injunctions first appeared in the House amendment to the bill already passed in the Senate, S. 2475, see H.R.Rep.No.2182, 75th Cong., 3d Sess. (1938); and the relief for first offenders was added in the House-Senate conference committee, see H.R.Rep.No. 2738, 75th Cong., 3rd Sess. (1938). However, neither of these two reports contains any discussion of the relation between sections 216(a) and 217
 
 
 [14]
 Appellees' Brief at 4 n. 3
 
 
 [15]
 Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); Drivers Local No. 639 v. Penello, 137 U.S.App.D.C. 64, 420 F.2d 632, 635 (1969); United States v. Conole, 365 F.2d 306 (3d Cir. 1966)
 
 
 [16]
 Appellees' Brief at 4 n. 3
 
 
 [17]
 We note that the Government has agreed, see Appendix at 551a-552a, that the defendant should be allowed to serve the sentence on weekends, in order that his trucking business may not be interrupted
 
 
 [1]
 Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection
 
 
 [2]
 This reasoning is similar to that employed in our 1950 case of Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950), where this court found the Civil Rights Act, 42 U.S.C. Sec. 1983, to be an explicit statutory exception to the Anti-Injunction Act, 28 U.S.C. Sec. 2283, an interpretation adopted by the Supreme Court in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). I find no more explicitness contained in the language of Sec. 1983 to qualify it as an exception to Sec. 2283, than is present in the clear and unambiguous language of Sec. 216 (a)