## UNITED STATES ex rel. BROWN, Administrator, Office of Price Administration, v. LEDERER.

### No. 8405.

Circuit Court of Appeals, Seventh Circuit.
Jan. 15, 1944.

Rehearing Denied Feb. 17, 1944.

See, also, 139 F.2d 861.

Lloyd C. Moody and John Elliott Byrne, both of Chicago, Ill., for appellant.

John F. Manierre and Robert B. Johnstone, both of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Appellant prosecutes this appeal from a sentence imposed upon him in a criminal contempt proceeding wherein he was charged with a violation of an injunction which restrained him from selling meat at prices in excess of Revised Maximum Price Regulation No. 169.

Briefly stated, the evidence disclosed:

Appellant was engaged as a wholesaler of meats when the Emergency Price Control Act became a law, January 30, 1942, 50 U.S.C.A. Appendix § 901 et seq. His customers were retail butchers. This Act, Sec. 2 (a) and (b), granted authority to the Price Administrator to regulate and establish maximum prices for commodities, and Sec. 4 made it unlawful to sell or deliver such commodities in violation of any regulation or order issued under Sec. 2. The Act also provided, Sec. 205 (a), for the issuance of temporary or permanent injunctions upon a showing by the Administrator, of violations. Pursuant to such Act, maximum prices were established for the sale of beef and veal carcasses through what was called Revised Maximum Price Regulation No. 169, as amended.

When this Regulation was promulgated, Adolph and Arthur Lederer were partners engaged in the wholesale meat business in Chicago under the firm name of A. Lederer Co. After due investigation and upon sworn complaint the court was asked to enjoin both members of this firm from selling meat at prices in excess of those fixed in said Regulation. Affidavits accompanied the complaint and upon the hearing, which showed numerous violations, the court made findings of fact and conclusions of law and entered a preliminary injunction which enjoined said partners from "selling or delivering * * * any beef or veal carcasses or wholesale cuts at prices in excess of the maximum prices therefor, as established under the provisions of Revised Maximum Price Regulation No. 169, as amended." The defendants, who were in court, were each given a copy of said order.

Notwithstanding the Regulation, and in violation of the injunction, A. Lederer & Co., continued to sell beef and veal carcasses above the prices fixed as maximum prices in said Regulation. Thereafter upon petition of the O. P. A. Administrator, and upon the affidavit of an investigator, an application was made to the court to punish the partners for the violation of the injunctional order. The court first appointed two attorneys to conduct the prosecution. A jury was waived, and a trial was had by the court. The evidence showed, and conclusively, that A. Lederer & Co. sold beef and veal carcasses to retail meat dealers at prices in excess of those fixed in said Regulation. The sales, which were of considerable amount, were accompanied by the firm's giving written invoices to purchasers wherein the price charged was the selling price fixed in said Regulation No. 169 or a little less. At the same time

the purchaser was required to make cash payments in addition to the invoice prices, for the meat purchased. These additional prices were from 7¢ to 11½¢ per pound.

Upon the conclusion of the evidence, and there was no dispute,[1] the court found the defendant, Adolph Lederer, not guilty, and the defendant, Arthur Lederer, guilty of the offense charged and imposed on him an imprisonment sentence of a year and a day.

The grounds urged for reversal on this appeal are:

(1) The proceeding for contempt of court was illegal because not prosecuted as a regular criminal case as provided by 50 U.S.C.A. Appendix § 925(b).

(2) The sentence imposed was excessive.

(3) The order to show cause was vague and insufficient to apprise the appellant of the charge he had to meet.

(4) There was no proof as to what the Maximum Price Regulation No. 169 provided, an essential to a valid conviction for violation of said Regulation.

■ 1. *The legality of the instant method of procedure.* We have no hesitancy in holding that appellant was properly prosecuted by the court, sua sponte, for a violation of the injunction theretofor issued. The existence of the provision in subsection (b) *permitting* the Administrator to bring to the attention of the Attorney General, who in his *discretion* may institute appropriate criminal proceedings, does not preclude the right of a court to protect the dignity of its own injunction by punishing wilful and repeated violations of its order. In Jurney v. MacCracken, 294 U.S. 125, at page 151, 55 S.Ct. 375, 380, 79 L.Ed. 802, the Court said:

"Punishment, purely as such, through contempt proceedings, legislative or judicial, is not precluded because punishment may also be inflicted for the same act as a statutory offense. * * * 'the same act may be an offense against one jurisdiction and an offense against another; and indictable statutory offenses may be punished as such while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being diverso intuito and capable of standing together.'"

From a study of the procedure followed in criminal contempt cases under 28 U.S.C.A. § 385, note 73, it is evident there is no standard mode of procedure, and the usual practice is to file an affidavit apprising the court of a violation of its order. The court then issues a rule to show cause, directed to the accused. The procedure here followed gave to the appellant a full opportunity to defend himself against an improper accusation. He filed no answer either refuting the truth of the facts set out in the affidavit and rule, nor did he challenge the mode of procedure adopted by the trial court. He failed to take the stand in his own behalf, or to offer any witnesses whatsoever to prove that his business was conducted lawfully or in a legal manner.

■ Appellant specifically objects to the court's appointing counsel, and insists that in a criminal contempt proceeding, the case against him should be in charge of the Attorney General or some assistant, or the United States District Attorney. In the absence of any specific statute, we think it was not only permissible but entirely appropriate that the court appoint counsel to take charge of proceedings instituted to enforce its order, and the attorneys thus appointed would be authorized to begin and carry through the contempt proceedings. The court is not required to select counsel from the staff of the United States District Attorney. McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211; Western Fruit Growers v. Gotfried, 9 Cir., 136 F.2d, 98.

■ 2. Appellant charges that the sentence of a year and a day is excessive, in that subsection (b) provides for a maximum punishment of a year for the violation of the O. P. A. Act. The criminal contempt statute, U.S.C.A. § 385 has been construed to permit of a sentence or fine, the extent of which is limited only by the court's discretion. Creekmore v. United States, 8 Cir., 237 F. 743, L.R.A.1917C, 845.

The evidence here established a purposeful practice of charging prices far in excess of ceiling prices and concealing such illegal act by setting forth only the legal price on the invoice. Nor were the instances few or indicative of oversight or mistake. On the other hand, the violations were flagrant, numerous, accompanied by deceptive practices indicative of criminal intent and prompted solely by avarice and greed.

Even though the maximum jail sentence

---

[1] The defendants offered no rebuttal testimony.

be one year for the offense of violating the Price Control Act, there would be no excess of that punishment in the year and a day sentence in the instant case, for the reason that the evidence shows the commission of innumerable separate offenses, each of which might have been the subject of a criminal prosecution and each offense, if established, could invoke an imprisonment sentence of a year.

We, however, are convinced, and place our decision on the ground, that punishment in a contempt proceeding, for violation of a valid injunctional order made by a court of competent jurisdiction, is not fixed or determined by the criminal statute which prescribes a penalty for its violation, but rests solely in the sound discretion of the court, subject only to the Constitutional provision against cruel and unusual punishment.

3. *The Rule to Show Cause was Insufficient and Vague.* The rule to show cause charges the appellant with having "violated the preliminary injunction issued by this Court and entered on the 18th day of February, 1943, in the Civil Action * * * in that they have offered for sale, sold and delivered beef and veal carcasses and wholesale cuts at prices in excess of the maximum prices established by Revised Maximum Price Regulation No. 169, as amended, as more fully set forth in the above referred to affidavit, Exhibit 'A' contrary to the preliminary injunction * * *." The affidavit, incorporated by reference, alleged 17 sales to 9 customers, citing with complete specificity the sales, giving the invoice number, date, ceiling price, actual price paid, and the invoice price. This allegation of the charge which defendant was to meet was amply sufficient to apprise him of the charge involved. He had but one charge to refute, i.e., that he sold in excess of ceiling prices. He had merely to compare his receipts (ordinarily one would say, invoices) with the maximum prices permitted under the Regulation. That matter was one of precise determination and proof. As stated in the Cyclopedia of Federal Procedure, Longsdorf, Sec. 3720, the requirements of the pleading charging contempt of court, are:

"It has been said generally that a criminal contempt is in its nature a distinct criminal offense and must in some appropriate form be laid as such, so as to advise accused that the judgment sought against him is one of punitive character. The pleading, whether petition or information or other formal statement, by which the prosecution is initiated, should state completely the necessary facts constituting the offense, clearly apprising defendant of the nature of the charge against him, and the acts he will be called upon to meet. Although averments which amount to mere legal conclusions will not suffice, technical accuracy is not required. * * * Rules relating to duplicity in criminal prosecutions are not applicable in cases for criminal contempt. * * *"

Even if we were to require the Rule to Show Cause to have the specificity of an indictment, which we do not, this complaint amply meets any requirement of clarity of charge.

4. *Failure of Proof of Maximum Price Regulations.* Appellant complains that the crime charged was not proved because nowhere is it shown what the Maximum Price Regulation No. 169 provided, and therefore it cannot be held that the price at which the meat was sold was in excess of the Regulation. He also contends that a court will not take judicial notice of the Regulation as reported in the Federal Register.

This assigned error is without merit. The Federal Register Act, 44 U.S.C.A. § 307, provides that "the contents of the Federal Register shall be judicially noticed and, without prejudice to any other mode of citation, may be cited by volume and page number." Aside from this statutory provision the rule seems to be well settled as stated in 20 American Jurisprudence 67, 68: "The courts also take judicial notice of the official acts of the heads of the executive departments of the Federal Government of public notoriety or general public interest, but not of departmental acts having no such character." As to judicial notice by courts of regulations of the Government, even though not specifically introduced in proof, see Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013; United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11; Lyons Milling Co. v. Goffe & Carkener, 10 Cir., 42 F.2d 241, 83 A.L.R. 501.

But despite this well established rule of law we have no doubt whatsoever that defendant was fully informed of the Maximum Price Regulation (he had been informed by the order of injunction where such Regulation could be found). His action, disclosed by the fact that the invoice

price was in all cases a very close approximation of the Maximum Price Regulation, also leaves no room for doubt that he was aware of such Regulation and took pains to conceal his profiteering by collecting sums in excess of the stated invoice price in cash when the sales were made. At the trial he made no contention that he lacked knowledge of such Maximum Price Regulation. The evidence leaves no room for legitimate doubt as to appellant's intentional, repeated, and flagrant violation of the prices fixed as ceiling prices in said Regulation. His presentation of written invoices and his collection of the excess in cash at the time of sales, clearly showed his knowledge of the price ceiling which supplied the formal proof of the contents of the order.

The judgment is affirmed.