UNITED STATES of America, Appellee,

v.

Warren QUADE, an Individual, and Lyle Quade, an Individual, doing business as Northwest Truck Rentals, a Division of L&W Quade, Inc., a Minnesota corporation, and Amber Transfer, Appellants.

Nos. 77–1150 and 77–1155.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 30, 1977.

Decided Oct. 12, 1977.

Jack S. Nordby, St. Paul, Minn., argued and filed brief for appellants.

Richard E. Vosepka, Jr., Asst. U. S. Atty., Minneapolis, Minn., argued and Robert G. Renner, U. S. Atty., Minneapolis, Minn., and Robert K. Goren, I. C. C., Philadelphia, Pa., on brief for appellee.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

ROSS, Circuit Judge.

Warren Quade and Lyle Quade were charged with 28 counts of contempt of court under 18 U.S.C. § 401(3). In each count they were charged with hauling non-exempt commodities interstate, without having the appropriate ICC authority, and in willful disobedience of a prior order for consent judgment.

Warren Quade was found guilty of counts 11–28 and acquitted of counts 1–10. Lyle Quade was found guilty of counts 7–28 and acquitted of counts 1–6. The trial court sentenced each defendant to two years imprisonment. He provided that the defendants should each serve four months in prison, that the balance of their terms be suspended and the defendants placed on probation for the remainder of their terms. From judgment entered on the convictions, both Quades appeal. We affirm.

On this appeal the defendants raise three questions: 1) sufficiency of the evidence to establish the requisite intent; 2) alleged error by the trial court in allowing the entire earlier order and injunction into evidence, including that portion describing their prior violations resulting in the injunction; 3) alleged error in the imposition of sentences of imprisonment. We find these errors to be without merit and discuss them seriatim.

## I. Sufficiency of Evidence

The first ten counts alleged that the Quades hauled frozen meat interstate and the last eighteen counts alleged that they hauled feed supplements from Oxnard, California to various destinations. As to the first ten counts there was no question that the trips took place, but the Quades contended that the trucks were leased to the shipper, Weinstein International. Also Warren Quade testified that he had not been involved in the Weinstein transactions and was acquitted on all those counts. Lyle Quade was acquitted on counts 1–6 but convicted on counts 7–10.

We have carefully examined the transcript of testimony and viewing the evidence, and the inferences naturally flowing therefrom, in the light most favorable to the government, we cannot say that the evidence was insufficient to convict Lyle Quade on counts 7–10. Only one trip lease was offered in evidence between Weinstein and the Northwest Truck Rentals but

Weinstein's traffic controller testified that he and the Quades had agreed that there would be a lease for each Weinstein shipment. David Quade, a brother, testified that he made lease agreements with Weinstein for each trip in the same form as the one introduced in evidence, but did not produce them.

The government presented testimony that Lyle Quade had told a government investigator, Mr. Jones, that his company had provided the drivers for these Weinstein trips. This was admitted in a statement to an ICC investigator but was later denied by Lyle Quade. The government also points out that there was no specific evidence of a lease as to counts 7–10 which may account for the conviction of Lyle on those counts but not on counts 1–6. .

It was shown that Lyle Quade posted bond for a Northwest Truck Rental driver arrested in Iowa on one of the Weinstein trips and that no lease was shown to the Iowa magistrate at the time of the arrest. There were other statements of the government's witnesses which were contradicted by the Quades.

In our view there was enough direct and circumstantial evidence, taking the view most favorable to the government, to permit the jury to convict Lyle Quade on counts 7, 8, 9 and 10. *Compare United States v. Oliver*, 525 F.2d 731, 739 (8th Cir. 1975), and cases cited therein.[1]

■ As to the remaining counts the product hauled was a feed supplement which contained kelp, together with other ingredients. Kelp is an exempt product, but the product hauled, SeaQuestraMin (SQM) contained additives and did not qualify for the kelp exemption under ICC regulations. Again, the only question was whether the Quades knew that SQM was not an exempt commodity.

The bags of SQM were labeled to show the contents and clearly indicated the proportion of additives. The Quades, therefore, were on notice that the product was not exempt from ICC permit requirements. The Quades claimed that they thought they were hauling kelp, and that kelp was shown in a "Guide Bulletin" as an exempt commodity. However, this same bulletin, on its title page, explained that exempt products were no longer exempt upon the addition of certain percentages of other ingredients. Warren Quade testified that he had not read this page. Again, while the evidence was conflicting, there was sufficient direct and circumstantial evidence, viewed in the light most favorable to the government, to justify a determination by the jury that the defendants willfully hauled a nonexempt product.

## II. Admission of Prior Injunction into Evidence

■ The defendants claim that it was reversible error for the court to introduce the entire prior injunction into evidence rather than just the paragraph which ordered the defendants to cease hauling nonexempt products in interstate commerce without a certificate of authority. The paragraphs to which they object are the introductory paragraph, paragraph II, the first sentence of paragraph IV and the paragraph introductory to the order.[2] They

---

1. The truck lease, defendant's exhibit 1, was dated July 30, 1971, and continued for 25 days "and thereafter until either party shall have terminated the same by written notice * *." The first six counts related to hauling meat within that 25 day period and the last four counts involved transactions substantially later in time.

The lease provided that Weinstein's employees would drive the truck. The Quades provided two part-time employees to Weinstein for this purpose. Weinstein paid them for their services as his employees. After the 10 trips were completed the two drivers returned to the status of "occasional employees" or "casual labor" for the defendants.

2. These paragraphs are as follows:

This matter, having come before the Court, upon the verified complaint of Plaintiff, Interstate Commerce Commission, alleging that the individual defendants, Warren Quade and Lyle Quade, and each of them, are engaging in or about to engage in acts or practices which constitute violations of Title 49, United States Code, Chapter 8, Sections 303(c), 320(d), and 322(b)(1), and the complaint further alleging:

do not claim error as to the introduction of the operative paragraph of the injunction.

These paragraphs add little to the case of the government and serve merely to identify the general nature of the charges' which had been the subject of the consent decree. They were not admitted into evidence until the end of the trial, and were not read to the jury, but the entire injunction was sent into the jury room with the other exhibits.

In our opinion all of the consent decree was admissible as background for the government's case and the portions thereof objected to serve principally to identify the general nature of the charges which had been the subject of the decree.

As to the objections that portions of the decree bring into the record, evidence of other crimes, it must be noted that Fed.R. Evid. 404(b) provides that evidence of other crimes or wrongs is admissible for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 403 permits the trial judge to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *."

The entire defense of the defendants as to counts 11–28 was based on their lack of knowledge that SQM was a nonexempt product and that there was no intent to violate the terms of the order. The injunction referred to past violations of the defendants by engaging in the "for-hire transportation business, * * * in interstate commerce, * * * without * * * a certificate or. permit issued by the Interstate Commerce Commission authorizing such transportation, * * *." We think it clear that evidence of past violations had probative value on the issues of intent, knowledge and absence of mistake or accident, and we are convinced that the danger of unfair prejudice did not outweigh the probative value of the challenged evidence.

Finally, in this connection we observe that counsel for the Quades asked the trial court for an instruction limiting the purpose for which the prior injunction was received. The court first read only the operative portion of the injunction, to which there was no objection, and later gave a cautionary instruction as follows:

Have in mind also that the charges before you, the charges that you are deciding, are those that are alleged to have occurred on and after July 30, 1971, and you need not concern yourselves with any references or evidence, if any there be, with reference to so-called violations that occurred before that date.

Near the end of the trial the portions of the decree to which objection was made came into the record with the entire injunction which was sent to the jury room with other exhibits. The portions offensive to the Quades were never read to the jury although in closing argument some references to past violation seem to have been made by government counsel. On the record as a whole, including the cautionary

II

That from July 25, 1966, up to and including the date of filing said complaint, Warren Quade, an individual, and Lyle Quade, an individual, and each of them, defendants, have been and are engaging in the for-hire transportation business, transporting property by motor vehicle, in interstate commerce, upon public highways, as set forth in Appendix "A" of Plaintiff's verified complaint, without there being in force with respect to said defendants, or either of them, a certificate or permit issued by the Interstate Commerce Commission authorizing such transportation, and that said motor carrier operations conducted by said defendants, and each of them, were and are violations of Title 49, United States Code, Section 303(c) and thus subject to be enjoined by this Court upon direct application of Plaintiff herein, pursuant to Title 49, United States Code, Section 322(b)(1).

IV

That unless restrained by this Court, the activities described in paragraphs II and III hereof engaged in by said defendants, Warren Quade, an individual, and Lyle Quade, an individual, and each of them, will continue in a manner and form aforesaid or otherwise.

* * * * * *

The individual defendants, Warren Quade, and Lyle Quade, and each of them, being represented by counsel, having consented hereto and admitting the allegations set forth in the complaint therein, it is hereby

* * * * * *

instruction, we find that the defendants received a fair trial in all respects, and we find no reversible error in the admission of any portion of the injunction.

### III. Alleged Error in Imposing Sentences

[4] The defendants claim that although they were convicted of violation of the contempt statute, 18 U.S.C. § 401(3), which sets no limits for fine or imprisonment, the sentences should have been limited to fines as provided in 49 U.S.C. § 322(a), the statute the Quades had been enjoined from violating. Although there is some authority for this position, *United States v. P & W Coat Co.*, 52 F.Supp. 792 (E.D.N.Y.1943), we choose to follow the rationale of two circuits which have upheld a sentence of imprisonment under similar circumstances. Both the Third Circuit and the Fifth Circuit have declined to require sentencing under the substantive violation statute and have upheld sentencing solely under 18 U.S.C. § 401(3). In *Mitchell v. Fiore*, 470 F.2d 1149 (3d Cir. 1972), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973), the court agreed with the rationale of *United States v. Fidanian*, 465 F.2d 755 (5th Cir.), *cert. denied*, 409 U.S. 1044, 93 S.Ct. 540, 34 L.Ed.2d 494 (1972), and paraphrased the *Fidanian* holding as follows:

> According to defendant, to permit his imprisonment under 18 U.S.C. § 401(3) (1970) for violating the injunction would subvert the scheme of section 216(a) and rob him of constitutional rights. This line of argument has been accepted by some courts, but it was squarely rejected in the recent case of *United States v. Fidanian*, 465 F.2d 755 (5th Cir. 1972). There the court reasoned, first, that such a limitation on the power of the federal courts to punish violations of their own orders—which orders, we note, were expressly authorized in section 217—should be explicit. Second, punishment for criminal contempt does not reach the first offenders whom Congress intended to shield in section 216(a); rather, it affects only those who have already experienced a judicial proceeding under the Act, namely, the proceeding when the injunction was issued.

*Mitchell v. Fiore, supra*, 470 F.2d at 1154 (footnotes omitted).

In this case both Quades were being punished for violating the court's earlier order by transporting for hire without authority, rather than for the substantive offense itself. We conclude, therefore, that the sentence was legally permissible.

The judgments of conviction are affirmed.