UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence Victor MILLER, a/k/a Larry
Miller, Defendant-Appellant.

No. 77–3173.

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1978.

As Amended an Denial of Rehearing and
Rehearing En Banc Jan. 3, 1979.

Paul A. Mansfield, of San Jose, Cal., David S. Koslow (argued), of Hertzberg, Kaplan & Koslow, Los Angeles, Cal., for defendant-appellant.

James E. White, Asst. U. S. Atty. (argued), Fresno, Cal., Robert S. Griswold, Jr. (argued), San Francisco, Cal., for plaintiff-appellee.

Before BROWNING, CARTER and ANDERSON, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Appellant Larry Miller was convicted of three counts of a twenty-one count information charging criminal contempt for violation of a court-ordered injunction, 18

U.S.C. § 401(3). He appeals both his conviction and his sentence.

The United States contends:

(1) the appeal is procedurally defective because Miller failed to move below for correction or reduction of his sentence under Fed.R.Crim.P. 35.

Miller contends:

(2) the district court lacked subject matter jurisdiction;

(3) the prosecution under count 1 was barred by the one year statute of limitations for criminal contempt, 18 U.S.C. § 3285;

(4) the injunctive order lacked the specificity required to apprise Miller of the conduct which was prohibited;

(5) the acts resulting in his conviction were not proscribed by the injunction; and

(6) the fine and sentences imposed are excessive in violation of the law and unsupported by the evidence.

We reach the substance of Miller's appeal, but find no merit in his contentions. We affirm.

## FACTS

On August 27, 1974, the Interstate Commerce Commission (ICC) filed a civil action against Larry Miller, Kern River Valley Growers Agricultural Cooperative, and other defendants to enjoin them from transporting property for compensation on public highways without obtaining necessary authorization from the ICC, in violation of § 222(b)(1) of the Interstate Commerce Act, 49 U.S.C. § 322(b)(1). Upon default by all defendants judgment was entered together with Findings of Fact and Conclusions of Law which, *inter alia*, enjoined Miller

" . . . from, directly or indirectly, individually or in concert or in participation with others, performing transportation of property for compensation on public highways by motor vehicle, unless

there is in force with respect to said transportation a certificate of public convenience and necessity, permit, license, or other form of authority issued by the [ICC] authorizing such transportation where such authority is required."

No appeal was taken from this judgment.

About sixteen months later, in April, 1976, the United States filed the information from which Miller now appeals. The information charged 21 counts of criminal contempt, 18 U.S.C. §§ 401(3) & 402, for engaging in transportation without authority subsequent to the entry of the injunctive order above. Miller filed numerous motions against the information all of which were denied. He then pleaded not guilty and agreed to submit the case to the district judge for a decision without a jury. In the Waiver and Stipulation of Fact upon which the case was submitted, Miller conceded the facts underlying the charges in counts 1, 18 and 19.

Briefly, the stipulated facts are that on three separate occasions (January 23, 1975; December 17, 1975; and December 18, 1975) Miller participated with Golden Coast Co-op as its organizer and principal managing official to solicit and engage in transportation of printing paper, pulpboard, toothpicks, plastic ware and wooden ware to designated cities. The compensation for these services was $1,484.00, $810.00 and $1240.00, respectively. The transportation occurred without authorization or exemption from authorization by the ICC.

The trial judge found Miller guilty of counts 1, 18 and 19 and referred the matter to the Probation Office for a presentence report. On the advice of counsel, Miller refused to make a statement to the probation officer.[1] This left unrefuted the government's allegations to the probation department that Miller, operating as Golden Coast Co-op, engaged in at least 85 illegal acts of transportation resulting in receipts over the 1½ year period of over $2.8 million.

---

1. Counsel for Miller says he advised his client not to cooperate with the Probation Office as a matter of prudent strategy because it might adversely affect his appeal. The United States suggests that it was because his production of documents relative to the information sought by the probation officer might reveal further violations.

Only Paul A. Mansfield represented Miller in the trial court.

The report concluded from the information supplied by the ICC that "Miller was known to have handled over $3,000,000, all of which seems to flow from his illegal trucking operations."

In addition the report showed that Miller had a criminal record involving such offenses as armed robbery, repeated possession of illegal fireworks and possession of stolen money orders. His numerous violations of the ICC rate tariffs were found to be destructive to the legitimate trucking industry. The report concluded that Miller's conduct was indicative of his marked pattern of disregard for the law and the courts in order to achieve financial gain and recommended both confinement and a fine.

At the sentencing the district judge entertained argument about these and other relevant factors. In response to a question from the bench about what kind of fine would be appropriate, Miller's counsel responded "I think a fine here in the area of $35- to $50,000 would be totally adequate." The judge then sentenced Miller to one year each for counts 1 and 18, to run concurrently. He fined Miller $100,000 on count 19 and ordered him to be committed until the fine was paid or otherwise discharged by due course of law.

## NECESSITY FOR A RULE 35 MOTION

■ The United States contends a defendant cannot seek review of a sentence without first moving under Rule 35 of the Federal Rules of Criminal Procedure for correction or reduction of the sentence.[2] However, general appellate treatment of sentencing claims implies there is no requirement that contemnors utilize Rule 35 before appealing their sentence.

■ In non-contempt cases appellate review of sentences which fall within the statutory limits is sharply restricted. Only if the sentence is procedurally defective or the result of abusive reliance on impermissible factors will review be afforded. *United States v. Kearney*, 560 F.2d 1358, 1369 (9 Cir. 1977) *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977); *United States v. Lustig*, 555 F.2d 737, 751 (9 Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); *United States v. Buck*, 548 F.2d 871, 877 (9 Cir. 1977) *cert. denied*, 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977); *United States v. Daniels*, 446 F.2d 967, 969–70 (6 Cir. 1971). Therefore it has been held in these circumstances that a challenge to a sentence as excessive must be made under Rule 35 to the trial court. *United States v. Weiner*, 418 F.2d 849, 851 (5 Cir. 1969); *Robbins v. United States*, 345 F.2d 930 (9 Cir. 1965).

On the other hand, sentences for contempt under 18 U.S.C. § 401(3), because not subject to a statutory upper limit, are directly reviewable and can be revised by an appellate court. *Green v. United States*, 356 U.S. 165, 188–89, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *United States v. Leyva*, 513 F.2d 774, 779 (5 Cir. 1975); *Mitchell v. Fiore*, 470 F.2d 1149, 1155 (3 Cir. 1972), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973); *United States v. Bukowski*, 435 F.2d 1094, 1110 (7 Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). Although the courts might have required that defendants exhaust their remedies under Rule 35 before seeking review of a contempt sentence, appellate review generally seems to have been afforded without such a requirement. *See, e. g., Mitchell v. Fiore, supra* 470 F.2d at 1149; *In re Chase*, 468 F.2d 128 (7 Cir.

2. The rule states:
 "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law." Rule 35, Federal Rules of Criminal Procedure.

1972); *United States v. Bukowski, supra* 435 F.2d at 1094; *United States v. Snyder,* 428 F.2d 520 (9 Cir. 1970), *cert. denied,* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970); *United States v. Leyva, supra* 513 F.2d at 774. We decline to impose a requirement on Miller that he move for a reduction of his sentence under Rule 35 prior to appealing his sentence.

## SUBJECT MATTER JURISDICTION

■ The underlying injunction against Miller resulted from a civil action which was filed by the ICC in its own name, but handled by the United States Attorney. Miller contends 28 U.S.C. §§ 2321–2323 require the action to have been instituted by the Attorney General in the name of the United States. Therefore he argues that the injunction is defective, depriving the district court of subject matter jurisdiction over the contempt charges.

28 U.S.C. §§ 2321–2323 provide in relevant part:

§ 2321

"(b) The procedure in the district courts in actions to enforce, in whole or in part, any *order of the [ICC]* . . . shall be as provided in this chapter." (Emphasis added.)

§ 2322

"All actions specified in section 2321 of this title shall be brought by or against the United States."

§ 2323

"The Attorney General shall represent the Government in the actions specified in section 2321 of this title . . . ."

Miller's contention is without merit for two reasons. First, these sections require the Attorney General to institute suit on behalf of the United States only to enforce an *order of the ICC.* The underlying injunctive suit in this case was brought to enforce the Interstate Commerce Act directly, not an order of the Commission. Miller argues that the term "order" should

**3.** This provision also purports to authorize the ICC to seek enforcement of its own orders in its own name and would appear in that respect

be broadly construed to encompass any action which has the effect of enforcing a "decision of the Interstate Commerce Commission." Yet notwithstanding Miller's analysis of the cases there is no authority for such a broad construction of these sections. An order of the ICC is an official action directing identified parties to act or cease to act in a specified manner. Absent an actual order of the ICC which is the subject of an enforcement proceeding, 28 U.S.C. §§ 2321–2323 are inapplicable.

Second, there is explicit statutory authority for the ICC to enforce the Interstate Commerce Act by suits for injunction. Section 222(b)(1) of the Interstate Commerce Act, 49 U.S.C. § 322(b)(1), provides:

"(b)(1) If any motor carrier or broker operates in violation of any provision of this chapter . . . or any lawful rule, regulation, requirement, or order promulgated by the Commission, . . . *the Commission or its duly authorized agent may apply for the enforcement thereof to the district court of the United States* . . . .

\* \* \* \* \* \*

The court shall have jurisdiction to enforce obedience to any such provision of this part . . . by a writ of injunction . . . \* \* \* " (Emphasis added.)

This section of the Act has been construed to authorize enforcement proceedings sought in the name of the ICC.[3] *I.C.C. v. Big Valley Growers Co-op,* 493 F.2d 888 (9 Cir. 1974). The district court below had jurisdiction to enter the injunction which underlies this case.

## STATUTE OF LIMITATIONS

■ 18 U.S.C. § 3285 provides:

"No proceeding for criminal contempt within Section 402 of this Title shall be instituted against any person, corporation or association unless begun within one year from the date of the act complained of; . . . "

to be inconsistent with 28 U.S.C. §§ 2321–2323. However, this problem does not face this panel.

The filing of the information against Miller on April 30, 1976, occurred more than one year after the date of the alleged conduct in count 1. Contending that the contempt proceedings against him were "within Section 402" of Title 18, Miller claims his prosecution under count 1 is barred by the one year limitation period in 18 U.S.C. § 3285.

The United States originally charged Miller with "Criminal Contempt, 18 U.S.C. 401, Subdivision 3, *402*". (Emphasis added.) However, at trial the government conceded the inapplicability of § 402 to this case, suggesting its deletion from the information. The court agreed to the deletion. Nevertheless, Miller argued that § 402, whether stated in the information or not, is the section under which he should have been charged. The trial judge held § 402 is inapplicable to this case.

This ruling was correct. 18 U.S.C. § 402 provides relevant part:

"This section shall not be construed to relate to contempts committed in . . disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law."

An injunction obtained by the ICC, an agency of the United States, seeking to enforce the Interstate Commerce Act, is entered "on behalf of, the United States." Section 402 is therefore inapplicable to this case.[4] *See generally United States v. Duncan,* 503 F.2d 1021, 1022 (10 Cir. 1974).

## SPECIFICITY OF THE INJUNCTIVE ORDER—F.R.C.P. 65(d)

Miller contends the injunctive order supporting his contempt conviction is unenforceable because it lacked the specificity required by Rule 65(d) of the Federal Rules of Civil Procedure. Rule 65(d) requires that every injunctive order be specific, describing in reasonable detail, "and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."

This injunction prohibits Miller from "performing transportation of property for compensation on public highways by motor vehicle" unless appropriate authorization is obtained from the ICC. This language standing alone states a clear prohibition. Moreover, the circumstances of this case show that Miller understood its meaning. After the entry of the injunction Miller never sought a modification or clarification of its language. He stipulated at trial that he had full knowledge of the terms of the judgment and willfully and defiantly violated it.

The sole ground on which Miller contends the injunction is too vague is that it repeats language contained in the Interstate Commerce Act, § 222(b). This, he contends, makes it a general "obey the law" injunction. But the mere fact that the injunction is framed in language almost identical to the statutory mandate does not make the language vague. In this situation the statutory terms adequately describe the impermissible conduct.

## SCOPE OF THE INJUNCTION

Next Miller contends his association with Golden Coast Co-op, even if violative of the Act is not prohibited by the injunction because the injunction was aimed at his conduct in connection with Kern River Valley Growers Co-operative. Suffice it to reiterate that the injunction ran directly

---

**4.** It is not clear whether § 402 was ever deleted from the information and, interestingly, the trial judge included reference to it in the judgment of conviction. However, the transcript and the record make it clear that any reference to § 402 by the United States in the information or the district court in the judgment was in relation to its provision that cases not directly within its terms "may be punished in conformity to the prevailing usages at law". This reference to § 402, though not highly prudent, was nonetheless permissible without invoking the limitation period of 18 U.S.C. § 3285.

against Miller individually and prohibited him from:

". . . directly or indirectly, individually or in concert or participation *with others,* performing transportation of property . . . ." (Emphasis added.)

This prohibition is not limited to Miller's association with Kern River Valley Co-op; it prohibits further illegal transportation of property in concert with any person or entity. Although in some circumstances such a proscription might be impermissibly broad, Miller's conduct in this case falls squarely within the type of conduct which the injunction can permissibly forbid. A principle managing official who continues his illegal conduct merely by utilizing a different business entity cannot circumvent a district court's decree. *See generally I. C. C. v. Rio Grande Growers Cooperative, et al.,* 564 F.2d 848, 849 (9 Cir. 1977).

## CHALLENGES TO THE SENTENCES AND FINE

### A. *Extent of the District Judge's Authority to Sentence Under 18 U.S.C. § 401(3)*

■ 18 U.S.C. §§ 401 and 402 provide the federal statutory authority to punish for contempt.[5] Section 401 relates to both criminal and civil contempt and contains no limitation on the power of the district court to impose fine or imprisonment for its violation. The district court will be reviewed only for an abuse of discretion. *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); *United States v. Leyva, supra* 513 F.2d at 779.

Section 402 relates to contempts which also constitute violation of some other criminal statute of either the United States or of any state in which the act was committed. This section limits the fine or imprisonment which may be imposed for these kinds of contempts to $1,000 or six months imprisonment or both. However, § 402 expressly states it is inapplicable to contempt such as Miller's which is committed in disobedience of court orders entered in suits prosecuted on behalf of the United States. In such a case the contempt may be punished "in conformity with the prevailing usages at law."

Miller contends that even though his contempt may be excluded from the protection of the specific limitations of § 402, permitting his punishment under § 401(3), he cannot be punished more seriously than authorized by the underlying criminal statute which his conduct violates. Assertedly the language in § 402 referring to the "Prevailing usages at law" refers the district court specifically to the penalties provided in the criminal statute forming the basis of the injunction—in this case § 222(a) of the In-

5. These sections provide:

"*§ 401* Power of court

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

"*§ 402* Contempts constituting crimes

"Any person . . . willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States . . . if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title . . . . .

". . . in no case shall the fine to be paid to the United States exceed, in case the accused in a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months.

"This section shall not be construed to relate to contempts committed in the presence of the court, . . . nor to contempts committed in disobedience of any lawful writ, process, order, rule, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law."

terstate Commerce Act, 49 U.S.C. § 322(a). The penalty in § 222(a) is limited to a fine, never in excess of $500 for any single transaction.

■ We disagree. Although the general position espoused by Miller received approval in several early district court decisions, *United States v. B & W Sportswear, Inc.,* 53 F.Supp. 785 (E.D.N.Y.1943); *United States v. P & W Coat Company,* 52 F.Supp. 792 (E.D.N.Y.1943), it has been unanimously rejected in subsequent years by the circuit courts which have ruled on the issue. *United States v. Quade,* 563 F.2d 375, 379 (8 Cir. 1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978); *Mitchell v. Fiore,* 470 F.2d 1149, 1154 (3 Cir. 1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973); *United States v. Fidanian,* 465 F.2d 755 (5 Cir. 1972), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 540, 34 L.Ed.2d 494 (1972); *United States v. Sternman,* 433 F.2d 913, 914 (6 Cir. 1970); *United States v. Lederer,* 140 F.2d 136 (7 Cir. 1944). We agree with the circuit courts which have reached this issue that the mere fact that an act may constitute a violation of a criminal provision as well as a contempt affords no basis by itself upon which to limit a federal court's sentencing power for the contempt.

Punishment for contempt is intended to vindicate the court's authority for a violation of its order, not to punish the violation of a criminal statute. The offense against the court is distinct. Moreover, any punishment for contempt in circumstances like these will by necessity reach conduct which would be a second offense under the criminal provision. Therefore, except for the review by appellate courts for abuse of discretion, any limitation of a federal court's authority to punish violations of its own orders must be explicit. *See United States v. Quade, supra* 563 F.2d at 379; *Mitchell v. Fiore, supra* 470 F.2d at 1154; *United States v. Fidanian, supra,* 465 F.2d at 755–57; *United States v. Sternman, supra* 433 F.2d at 914; *United States v. Lederer, supra* 140 F.2d at 139.

An explicit limitation on the sentencing power of a federal court for contempt is found in 18 U.S.C. § 402, but as previously explained, that provision is inapplicable to Miller's conduct. Miller maintains, however, that § 402, wherein it refers the district court to the "prevailing usages at law" for punishment of contempts not covered by its limitations, is an explicit direction to the district court to refer to any underlying criminal provision which the contemnor's conduct may violate. We find no support either in precedent or logic for this novel argument. This phrase contains no explicit limitation on the district court's contempt authority. If anything, it incorporates the substantial precedent throughout the federal system that the sentencing power of federal courts for contempt under § 401(3) is limited only by the bounds of discretion.

B. *Applicability of Rule 11 of the Federal Rules of Criminal Procedure*

■ Miller contends his waiver and stipulation of facts constitutes a guilty plea for purposes of Rule 11 of the Federal Rules of Criminal Procedure, mandating that he be afforded the protections defined therein. However, this circuit already has ruled that the requirements of Rule 11 are "applicable only to guilty pleas [or pleas of *nolo contendere*] and not to stipulations." *United States v. Terrack,* 515 F.2d 558, 560 (9 Cir. 1975). *See United States v. Garcia,* 450 F.2d 287 (9 Cir. 1971). Miller invites us to overrule *Terrack,* but we have neither the authority nor the inclination to do so. We agree with the majority in *Terrack* who stated:

"The dissent would include stipulations within the ambit of Rule 11. This would unduly encumber trials now often shortened by stipulation of evidence and to identify exhibits, to specify the chain of custody, and other important matters. To require a Rule 11 examination on every stipulation containing a vital admission of the defendant would add ritualistic formalities where none are needed nor required. Here, appellant and his trial counsel were following the usual procedure to preserve the right to appeal the

speedy trial question. If Rule 11 were to be applied only to stipulations constituting de facto pleas of guilty, when and how is that determination made? Every stipulation of a vital fact is an admission tending to establish guilt. Rule 11 specifically applies to pleas of guilty and *nolo contendere* and not to trials. These are areas with a clear division between them. They are either black or white. To create a gray area where stipulations, as a part of a trial, would be governed by the rules on the acceptance of pleas would further complicate the trial judge's duties and push him further into the role of an advocate." *United States v. Terrack, supra* 515 F.2d at 561 n.3.

■ This does not mean that defendants who wish to proceed to trial through stipulations of fact or waivers in order to preserve an issue for appeal are left unprotected. It is the responsibility of the trial judge when accepting a stipulation or waiver to assure that it is voluntarily made. *See United States v. Terrack, supra* 515 F.2d at 558–60.

Here Miller stipulated that he knowingly, willfully and defiantly committed the illegal acts of transportation for which he was convicted. He also stipulated, among other things, that he understood that the range of punishment for the contempt with which he was charged was solely within the discretion of the trial judge.[6] At the hearing the district judge ascertained from both Miller and his counsel that the matters in the stipulation and waiver were understood and were voluntarily submitted. This inquiry was adequate.

### C. *Validity of the Committed Fine*

■ Miller complains that the imposition of a fine with the additional order that

he stand committed until the fine is paid violates due process and constitutes cruel and unusual punishment. He makes no contention that he is indigent or otherwise unable to pay the fine.

■ Although there is no statutory authority expressly authorizing committed fines, the power has long existed at common law and is "assumed" in the federal system. *United States v. Estrada de Castillo,* 549 F.2d 583, 585 (9 Cir. 1976) (J. Hufstedler, concurring). *See* 18 U.S.C. §§ 3565, 3569. The decision to impose a committed fine rests in the discretion of the trial judge. *United States v. Estrada de Castillo, supra* 549 F.2d at 585. Presently it is well established that an indigent prisoner cannot be subjected to imprisonment for failure to pay a fine for a longer period of time than someone who has ability to pay the fine. *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *United States v. Estrada de Castillo, supra* 549 F.2d at 583. However, the Supreme Court when establishing that rule took special care to explain:

> "We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." *Tate v. Short, supra* 401 U.S. at 400, 91 S.Ct. at 672.

■ In the absence of a protestation that he is indigent Miller cannot complain of his committed fine. *Mitchell v. Fiore, supra* 470 F.2d at 1149. Furthermore, under Ninth Circuit law even if Miller claimed indigency, he must await the event of his being held beyond his sentence to complain. *United States v. Estrada de Castillo, supra*

---

**6.** The stipulation stated, *inter alia:*

"The defendant further acknowledges, agrees, and understands that the possible penalties which may be imposed in this action, if the defendant is convicted of any one or more of the charges herein, will not be limited to the penalties applicable to minor crimes, i. e., imprisonment for a period not to exceed six months or a fine of not more than $500, or both, for each offense. The defend-

ant further understands that the range of punishment, in the event that he is convicted of any one or more of the criminal contempts charged in the Information, is not prescribed by statute and is solely within the discretion of the Court and that said punishment may involve a monetary fine or imprisonment, with respect to each offense of which he is convicted."

549 F.2d at 583; *United States v. Dixon,* 538 F.2d 812 (9 Cir. 1976), *cert. denied* 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976).

### D. *Discretion of the District Judge*

Next Miller contends there was insufficient permissible information before the district judge to justify the fines and sentence imposed. Specifically, he maintains that specified information in the presentence report was improper, inaccurate or unsubstantiated.

■ As previously explained, because there is no statutory maximum to the sentence which can be imposed under 18 U.S.C. § 401(3), we have a special responsibility to review contempt sentences to prevent abuse. *Green v. United States, supra* 356 U.S. at 165, 78 S.Ct. 632; *Cheff v. Schnackenberg, supra* 384 U.S. at 373, 86 S.Ct. 1523; *United States v. Leyva, supra* 513 F.2d at 779. We have reviewed the information before the district judge and conclude that even disregarding the presentence report there was ample proper and reliable information before the district judge to support the sentences and fine imposed. Furthermore, we find nothing in the presentence report which would preclude the district court from relying upon it to impose sentence.

It was evident without relying on the presentence report that Miller was engaged in an ongoing business of illegal transportation of goods in violation of both the injunction and the Interstate Commerce Act. The trial judge could consider the conduct which was alleged in the initial suit for injunction against Miller to which Miller defaulted. Because of the default these acts were conceded. Also, though not proven in court, the judge also could take notice of the charges by the ICC in its information against Miller that he violated the court's injunction on 21 separate occasions. *See* *United States v. Weston,* 448 F.2d 626 (9 Cir. 1971), *cert. denied* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). And finally, Miller stipulated that he defiantly violated the court's injunction on three occasions. From these factors alone the district court

was justified in concluding that Miller was conducting a sustained trucking operation in violation of the law.

Although the income to Miller from these operations is not evident from these factors, the district judge was not limited to reliance on the amounts proven in the three stipulated counts. He could and did inquire what kind of fine would be appropriate to take the profit out of Miller's contumacious conduct. In reply Miller's own counsel conceded that a fine of $35,000 to $50,000 would be appropriate. From the totality of these considerations the district court was justified in imposing sentences of one year each, to run consecutively, on counts 1 and 18 and a fine of $100,000 on count 19.

■ Nothing contained in the presentence report changes this conclusion. Miller first objects to the inclusion of his criminal record in the presentence report, maintaining it was improper for the district judge to consider prior convictions unrelated to the contempt violation. This contention is frivolous. Rule 32(c)(2) of the Federal Rules of Criminal Procedure expressly provides: "The report of the presentence investigation shall contain any prior criminal record of the defendant . . . ." There is nothing improper with the district court's consideration of Miller's prior criminal record when imposing sentence.

■ Second, Miller objects to the assertions by the ICC, revealed in the presentence report, that Miller participated in at least 85 acts of illegal transportation in violation of the court's injunction and that the gross income from these operations was over $2.8 million. The report concluded, based on information supplied by the ICC, that "Miller was known to have handled over $3,000,000, all of which seems to flow from his illegal trucking operations." These allegations were repeated by the prosecuting attorney at the sentencing. Miller's counsel responded that these allegations were incorrect, but provided no substantiation for his claim. Now Miller contends this information is improper, inaccurate and unsubstantiated.

There is nothing improper with the inclusion of this information in the presentence report. It is well-settled that the "trial judge has wide freedom in the information that may be considered in imposing a sentence." *Scott v. United States,* 136 U.S. App.D.C. 377, 379, 419 F.2d 264, 266 (1969). in *Verdugo v. United States,* 402 F.2d 599, 611 (9 Cir. 1968), *cert. denied,* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1969), this circuit said:

> "There is undoubtedly a strong public interest in the imposition of a proper sentence—one based upon an accurate evaluation of the particular offender and designed to aid in his personal rehabilitation. The permissible scope of the sentencing judge's inquiry is accordingly broad, and limitations are not lightly imposed either upon the kind of information the court may consider or the source from which it may be obtained."

Specifically, we have long held that "evidence of other criminal conduct not resulting in a conviction may be considered when imposing sentence." *United States v. Weston,* 448 F.2d 626, 633 (9 Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. English,* 421 F.2d 133 (9 Cir. 1970); *Austin v. United States,* 408 F.2d 808 (9 Cir. 1969); *Ward v. California,* 269 F.2d 906 (9 Cir. 1959); *Taylor v. United States,* 179 F.2d 640 (9 Cir. 1950).

We have explained:

> "We do not desire to transform the sentencing process into a second trial, and we believe that other criminal conduct may properly be considered, even though the defendant was never charged with it or convicted of it. Its relevance to the problem before the judge, 'what sort of person is this defendant, and what sort of sentence should she receive?' is appar-

ent." *United States v. Weston, supra,* 448 F.2d at 633.

Miller replies that even if otherwise proper, inclusion of this information in the sentencing report makes his sentence defective because the ICC's allegations are unsubstantiated. He relies on *United States v. Weston, supra,* 448 F.2d 626, where we held that the district judge could not rely on assertions in a presentence report of "very serious" criminal conduct whose factual foundation "was almost nil" when the defendant could not effectively rebut the charges.

### E. *Weston is Distinguishable*

All three members of the panel believe that *Weston* is distinguishable and does not control our case. Judges Carter and Anderson would distinguish *Weston* as follows: In *Weston* the defendant was faced with allegations by the government in the presentence report of very serious criminal conduct. The allegations were based on opinions of government personnel and the statement of one informer that Weston had engaged in the disputed conduct. It was evident that because of the nature of this evidence the burden of disproving it was intolerably high. We held that when allegations included in a presentence report are not within the defendant's power to meaningfully refute and are based on only the barest factual foundation, then the district judge cannot in fairness consider them.

Here the information to which Miller objects is completely within his power to refute. In fact, Miller is the most qualified party to enlighten the court on the extent of his trucking operations and the income he receives from them, yet he refused to cooperate. Instead he relies on his counsel's bare assertion at the sentencing hearing that the ICC's information is incorrect.[7] Nothing in *Weston* requires the sentencing

---

**7.** It is significant that at no time did Miller or his counsel request a continuance or a hearing to permit them to present their side of the story and to require the government to introduce evidence in support of its representations. Miller's failure to seek such an opportunity while refusing to cooperate with the probation office and protesting the inaccuracy of the government's information reveals the minimal effort he made to assist the trial judge in obtaining an accurate understanding of the facts.

judge to conduct a trial-type inquiry into the validity of information in the presentence report merely because a defendant objects to its validity.

 Moreover, *Weston* was decided under unique circumstances. There, because of the inherent difficulty for the defendant to prove or disprove the assertions made against her in the presentence report, the trial judge ordered the government to produce the factual support for its allegations. In our case, as in most cases, the factual foundation of the information contained in the presentence report was not ordered produced. Nor need it have been. To require production in circumstances like this would wreak havoc in the sentencing process of our criminal system. Under such a rule every time a defendant objects to something in a presentence report he could demand proof by the government of its validity—and vice versa. In effect, the trial judge would be forced to engage in a second trial at the sentencing stage. This is not required by *Weston*. When a defendant has within his capacity the means to dispute the information presented by the government to the probation officer conducting a presentence investigation and chooses to remain silent, he cannot demand that the trial court disregard the government's version of the facts. We find no abuse of discretion by the trial judge in his sentencing of Miller.[8]

### F. *Other Contentions*

Miller raises a number of other contentions during the course of his argument. We have considered them and find them all to be without merit.

### CONCLUSION

The judgment of the district court is AFFIRMED.

8. Judges Carter and Anderson concur in the attached concurrence of Judge Browning insofar as it adds further or different grounds for distinguishing *Weston*, but would prefer the text above as the more accurate distinction of *Weston*.

BROWNING, Circuit Judge, concurring in the majority opinion in part, and in the result:

I join all of the majority opinion except the concluding three paragraphs of Part E. I do not believe *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), can be distinguished on the grounds advanced in those paragraphs. I do, however, believe *Weston* is distinguishable on another ground.

Concern for the fairness of sentencing procedure has grown over the last decade. *See, e. g.,* Frankel, *Lawlessness in Sentencing*, 41 U.Cin.L.Rev. 1 (1972). *Weston* made an important contribution in this troublesome area by limiting the circumstances in which the sentencing judge may rely on anonymous and unsubstantiated allegations of wrongdoing reported by the probation office. The majority opinion distinguishes *Weston* from the present case on a basis I do not believe justified by the facts of the two cases, and that I fear may weaken *Weston*'s capacity to correct abuses in sentencing.

*Weston* involved a single conviction for transportation of heroin. At sentencing, the probation officer reported the opinions of unidentified drug agents that the defendant was the chief area heroin supplier and that she frequently travelled long distances to make large heroin buys from which she earned six-figure profits. The defendant denied the allegations but did not attempt to disprove them, arguing that to do so would be impossibly burdensome. This court agreed, concluding that it would be unfair to enhance sentence on the basis of "unsworn evidence detailing otherwise unverified statements of a faceless informer . . . that [defendant] is probably guilty of additional and far more serious crimes . . . ." 448 F.2d at 631.[1] We held that the burden of refuting such allegations in a sentencing report cannot be placed on the defendant unless and until

1. As the court continued, "To us, there is something radically wrong with a system of justice that can produce such a result." 448 F.2d at 631.

the state produces "information such as to be persuasive of the validity of the charges there made." *Id.* at 634.

Ordinarily the defendant must bear the burden of going forward with evidence that information relied upon in sentencing is false or misleading. *Weston* relieved the defendant of this duty when information proffered by the prosecution is particularly prejudicial because it relates to substantially more serious wrongdoing than that for which defendant stands convicted, and is especially suspect because it is uncorroborated and based upon anonymous sources. If the defendant denies such allegations[2] the prosecution must produce some factual basis for crediting the information before the defendant can be compelled to assume the burden of rebuttal.

The factual parallels between this case and *Weston* are striking. As in *Weston*, the defendant in this case refused to cooperate with the probation office. Here, as there, serious allegations of additional criminal activity were made in the presentence report—in both cases the report pictured the defendant as the chief operative in a large-scale illegal business, while the proven charges were limited to a few illicit transactions. In our case, the presentence report attributes the allegations generally to ICC agents. In *Weston*, the report attributed the allegations generally to agents of BNDD. Here, as there, nothing was offered to demonstrate the reliability of the agency sources. Here, as there, the allegations were not corroborated by other information.[3] Here, as there, the defendant "vigorously denied the accuracy of the charges and objected to the judge's consideration of them without more substantiation of them than appeared in the probation report." *Id.* at 631. Here, as there, the defendant chose not to attempt to disprove the new allegations.

The majority distinguishes *Weston* on the ground that the burden of refuting the allegations was less severe for Miller than it was for Weston. The burden was the same. The government suggested in both cases that the defendant could by reasonable investigation secure evidence to disprove the additional allegations of criminal activity if they were untrue. In both cases, the government argued that the defendant could disprove the alleged large profits from illegal activities by producing bank, business, employment, and personal property records. In both cases the government suggested the defendant could disprove the alleged criminal activities—in *Weston* frequent trips to Arizona and Mexico to secure heroin; in this case frequent instances of illegal trucking—by cataloging the defendant's conduct over the relevant period.[4]

---

**2.** See *United States v. Harris*, 558 F.2d 366, 375 (7th Cir. 1977); *United States v. Bass*, 175 U.S.App.D.C. 282, 291, 535 F.2d 110, 120–21 (1976); *United States v. Yates*, 554 F.2d 342, 343–44 (7th Cir. 1977).

**3.** This case differs from decisions of other circuits which have distinguished *Weston* where there was testimony supporting the charges made at sentencing. See *United States v. Bass*, 175 U.S.App.D.C. 282, 293, 535 F.2d 110, 121 n. 21 (1976); *United States v. Williams*, 499 F.2d 52, 55 (1st Cir. 1974); *United States v. Allen*, 494 F.2d 1216 (3d Cir. 1974); *United States v. Needles*, 472 F.2d 652, 657–59 (2d Cir. 1972).

**4.** The *Weston* opinion summarizes the argument in this respect as follows (*id.* at 633–34):

It can be argued that there were a number of things that Weston might have done to refute the charge beside denying it: (a) The probation report named four persons, two of whom had been convicted and two of whom were charged with narcotics offenses, as Weston's distributors. This, it is said, provided a fertile field for investigation of probation reports, files, interviewing witnesses, defendants, etc. We note, however, that the report did not state that in any of the four cases there was evidence that any of the named persons was Weston's distributor, or that any of them had admitted it.

(b) The report indicated that Weston had made trips to Mexico as frequently as every two weeks. It is argued that she was in a position to supply information, if true, that she had not traveled, that she had lived continuously in the area, information as to where she was at various times during the preceding several months, etc.

(c) In view of the amount of profit alleged in the transaction, Weston had available to her a showing as to what monies or properties she had, her bank accounts, what type of household furniture and bric a brac; whether she was employed and what her salary was. In this connection it is noted that she had

The government's contention that the defendant's sentence may be enhanced because of uncorroborated allegations of additional serious criminal activity in a probation report unless he carries the burden of disproving them was rejected in *Weston* in language applicable here (*id.* at 634):

> This will not do. It is tantamount to saying that once a defendant has been convicted of offense A, narcotics agents can say to the probation officer, and the probation officer can say to the judge, "We think that she is guilty of much more serious offense B, although all we have to go on is an informer's report," and the judge can then say to the defendant, "You say it isn't so; prove that to me!" In addition to the difficulty of "proving a negative," we think it a great miscarriage of justice to expect Weston or her attorney to assume the burden and expense of proving to the court that she is not the large scale dealer that the anonymous informant says that she is.

The crux of the majority opinion in this case is that it was permissible for the district court to rely upon the defendant's alleged serious misconduct despite defendant's denial because defendant, as the alleged actor, was best able to refute the charge but had failed to do so. This was essentially the position taken by Judge Carter in his dissent in *Weston*.[5] It was expressly rejected by the majority in *Weston* and should be rejected here. Since it is always the alleged conduct of the defendant that is involved, the proposed distinctions would eliminate the *Weston* rule.

For a different reason, I believe *Weston* does not control this case. Despite the presence in the presentence report of uncorroborated allegations of serious additional offenses denied by the defendant that would warrant relief under *Weston*, Miller is not entitled to resentencing because he failed to make a *prima facie* showing that

his sentence was enhanced by the challenged allegations.

To make out a claim under *Weston* and *Townsend v. Burke*, 344 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the defendant must show that improper or inaccurate information was relied upon in the sentencing determination. *See, e. g., Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978) (en banc); *Santoro v. United States*, 462 F.2d 612, 612 (9th Cir. 1972). Absent such a showing, no prejudice has been suffered and relief is unwarranted.

In *Weston*, reliance was clear. Before reading the presentence report the sentencing judge said the offense warranted the minimum statutory sentence of five years. After reading the report, and in express reliance upon its allegations of serious additional criminal conduct, the judge imposed the maximum sentence of 20 years.

As the majority notes, in this case the presentence report alleged 85 instances of illegal trucking with gross revenues to Miller of $2.8 million. At the sentencing hearing, the prosecutor calculated orally that the net profit to Miller from these activities was about $700,000 and suggested that a fine approximating these alleged profits would be appropriate.

Defense counsel contended that the government's assertions as to the extent of Miller's illegal enterprises were exaggerated. The court asked defense counsel to offer a figure for a fine that would "take the profit out of [Miller's] illegal activities." Counsel suggested $35,000 to $50,000. The judge then imposed a fine of $100,000. The record indicates that rather than acting upon the estimate of defendant's illegal traffic in the probation report, the judge accepted the figure offered by defense counsel as an appropriate measure of the fine necessary to extract Miller's ill-gotten

---

retained counsel and apparently had the money to pay him.

**5.** Dissenting in *Weston*, Judge Carter said (at 634–35):

> The trial court gave appellant's retained counsel an opportunity to make an investiga-

tion and report the results thereof to the court. The areas listed in the opinion were fertile fields for investigation by the defense, but counsel refused to undertake any investigation, or to assist in any way in supplying information within such areas to the court.

profits, and raised the amount to $100,000 for the purpose of deterrence.[6] I would distinguish *Weston* only on this ground.

6. "I still don't know what would discourage you from this business, Mr. Miller. I'd like to keep you out of it if I could and get you to obey the law." Reporter's Transcript at 96.

