**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gary CORN, Defendant–Appellant.**

**No. 87–2722.**

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1988.

Paul B. Rosen, Houston, Tex., for defendant-appellant.

Evan M. Spangler, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Corn pleaded guilty to criminal contempt for violating an injunction that prohibited illegal trading in securities. The district court sentenced him to serve five years in prison and to pay $6,045,527 restitution to the victims of the securities fraud. We find no merit in Corn's challenges to the injunction underlying the contempt conviction, but, because the district court did not advise Corn, as required by Federal Rule of Criminal Procedure 11(c)(1), that he might be ordered to pay restitution in consequence of his guilty plea, we remand to the district court with instructions either to allow withdrawal of his plea or to resentence Corn without ordering restitution. If after trial or re-pleading, Corn is again sentenced to pay restitution under the Victim and Witness Protection Act,[1] the court may order compensation only for those losses resulting from offenses committed after the effective date of the statute.

I.

In 1977, the Securities and Exchange Commission sued Gary Corn charging him

---

1. 18 U.S.C. §§ 3579–3580 (1982).

with violations of the Securities Acts of 1933 and 1934, as amended,[2] in connection with his sale of securities in the Hollensworth Oil Company. The parties consented to resolution of this suit by the district court's issuance of a permanent injunction prohibiting Corn from dealing illegally in securities, "namely, fractional undivided working interests in oil and gas leases offered by James Edward Hollensworth, doing business as Hollensworth Oil Company, or any other securities."[3] The court specifically ordered Corn not to offer or sell unregistered securities that were subject to the registration requirements of Section 5 of the Securities Act of 1933[4] and not to use deceptive devices, make false statements, or fail to state material facts in connection with the offer, sale, or purchase of securities.

Between September 1, 1982, and December 31, 1983, however, Corn again became involved with illegal securities transactions, this time as vice president of sales for an organization known as the Beard Energy Group. The government prosecuted, and Corn pleaded guilty to criminal contempt for violating the injunction issued in the *Hollensworth* case. During the plea colloquy at rearraignment, the district court informed Corn, "if you are found guilty in this case the Court can impose just about any sentence it thinks is proper, ... everything except death." The court accepted Corn's guilty plea, however, without mentioning the possibility of a restitution order. At the sentencing hearing, the court ordered Corn confined to federal prison for five years and announced that a restitution order would follow if the prosecution and the probation office presented sufficient evidence of the losses suffered by the victims of the Beard Energy securities fraud. Three months later, the government submitted a statement showing that 160 investors had lost $6,045,527. Corn filed no objection to this evidence, and, without holding a hearing or receiving any further evidence, the court entered a restitution order, requiring Corn to reimburse each investor in full up to the more than six million dollar total.

Corn now challenges his conviction and sentence. He argues that the injunction entered in the *Hollensworth* case prohibited illegal trading only in Hollensworth securities and not in any other securities. In the alternative he asserts that the injunction was so vague or overbroad as to be unenforceable by contempt. He contends further that Judge Sterling, who convicted and sentenced Corn in connection with the Beard Energy fraud, lacked the authority to do so because only Judge Seals, who entered the injunction in *Hollensworth*, could legitimately enforce this order. Corn maintains that his guilty plea was not voluntary and intelligent because the court failed to inform him of the minimum and maximum possible sentences and to warn him that he might be ordered to pay restitution. Finally, he objects to the order of restitution insofar as it applies to losses incurred before January 1, 1983, the effective date of the Victim and Witness Protection Act which authorizes restitution as part of sentencing.[5]

II.

■ Corn's challenges to the injunction underlying the contempt conviction are without merit. The injunction repeatedly states that the prohibitions on trading reach "fractional undivided working interests in oil and gas leases offered by ... Hollensworth ... *or any other securities*" (emphasis added). Corn claims that this language refers to the specified interests in Hollensworth and to any other securities issued by Hollensworth. If the court had meant to limit its commands to Hollensworth securities, it would have said so. Instead, it explicitly made its order comprehensive.

2. 15 U.S.C. §§ 77a–78kk (1982); 17 C.F.R. 240.-10b–5 (1987).

3. *Securities and Exch. Comm'n v. Hollensworth,* Civil Action No. H–77–1048 (S.D.Tex.1977).

4. 15 U.S.C. § 77e.

5. 18 U.S.C. §§ 3579–3580 (1982).

■ Corn asserts that, if the injunction prohibits illegal trading in all securities, it amounts to nothing more than a vague order to obey the law. Federal Rule of Civil Procedure 65(d) provides: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in its terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained." The purpose of the rule is to put the parties on fair notice of what they are forbidden to do.[6] Thus, an injunction ordering a party to "obey the law" might well fail as overbroad. But the injunction issued in *Hollensworth* compelled more than mere obedience to the law; it set forth in specific terms the types of securities transactions proscribed. That the court incorporated into the injunction language from the securities laws does not make the injunction vague so long as the borrowed language "adequately describe[s] the impermissible conduct."[7] We find the *Hollensworth* injunction both specific and clear, and nonetheless so because it adopts terms from the securities laws.[8]

■ Corn asserts that the injunction and the contempt conviction must fall, nonetheless, because a court may not prohibit acts, such as mail or securities fraud, already forbidden by statute. In punishing him for contempt in this case, Corn argues, the court improperly circumvented the sentencing structure designed by Congress to punish mail or securities fraud and exercised instead its own unfettered discretion in imposing a penalty for disobedience to a court order.[9] Courts of equity, however,

have long had the power to enjoin and to punish as contempt acts forbidden by statute,[10] including acts that might have been punished as mail or securities fraud.[11] Indeed, a single course of conduct may lead to punishment for several distinct offenses under separate statutes,[12] and Congress has clearly defined contempt as an offense distinct from mail or securities fraud.[13] Moreover, that the *Hollensworth* injunction was entered by the consent of the parties vitiates Corn's objections to the order, as does his decision to plead guilty to the criminal contempt charge rather than to a specified number of counts of mail and securities fraud. Having made his plea bargain, Corn may not now complain of the contempt conviction on the ground that it carries penalties different from those for a fraud conviction.

■ The argument that Judge Sterling may not enforce Judge Seals's injunction also fails. Corn cites *Waffenschmidt v. Mackay* for the proposition that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."[14] This statement is true enough. The problem lies in Corn's attempt to equate the judge with the court. The *Hollensworth* injunction issued from the United States District Court for the Southern District of Texas and was not the personal command of Judge Seals, Judge Sterling, or any other judge on that court. "Each judge of a multi-district court has the same power and authority as each other judge."[15]

6. *Matter of Baum,* 606 F.2d 592, 593 (5th Cir. 1979); *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.,* 486 F.2d 114, 128–29 (5th Cir.1973).

7. *United States v. Miller,* 588 F.2d 1256, 1261 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

8. *See Securities and Exch. Comm'n v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir.1972); *Williams v. United States,* 402 F.2d 47 (10th Cir.1967). *See also* the *Hollensworth* injunction appended to this opinion.

9. *Compare* 18 U.S.C. §§ 1341, 1343 *and* 15 U.S.C. § 77q *with* 18 U.S.C. § 401.

10. *In re Debs,* 158 U.S. 564, 15 S.Ct. 900, 909–11, 39 L.Ed. 1092 (1895); *Miller,* 588 F.2d at 1261.

11. *Williams,* 402 F.2d 47.

12. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

13. *See supra* note 9.

14. 763 F.2d 711, 716 (5th Cir.1985).

15. *United States v. Martinez,* 686 F.2d 334, 338 (5th Cir.1982) (quoting *United States v. Stone,* 411 F.2d 597, 598 (5th Cir.1969)).

### III.

■ Corn contends that the district court erred in accepting his guilty plea without admonishing him as required by Federal Rule of Criminal Procedure 11(c)(1). Rule 11(c)(1) provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, the effect of any special parole term and, when applicable, *that the court may also order the defendant to make restitution to any victim of the offense.*
> (Emphasis added.)

Corn asserts that the court's statement, at rearraignment, that it could "impose just about any sentence it thinks is proper, ... everything except death," was too sweeping to inform him of the real consequences attendant upon his plea. The contempt statute under which Corn was convicted[16] contains no mandatory minimum penalty and leaves the maximum penalty within the sound discretion of the court. Corn acknowledged his understanding that he was pleading to a crime for which the court alone would determine the sentence, not only during rearraignment, but also in the plea agreement he signed, which stated, in relevant part, "I am aware that the maximum sentence provided by statute for the offenses charged in the Criminal Information is not limited in any way and that the court may impose a term of imprisonment and/or a fine of any duration or amount it may choose."

Rule 11(c)(1), however, requires the court explicitly to inform the defendant, before accepting his guilty plea, that the court may order him to pay restitution to the victims of the crime. In commenting on the 1985 amendment to the rule, adding this requirement, the Advisory Committee states, "[b]ecause this restitution is deemed an aspect of the defendant's sentence, ... it is a matter about which a defendant tendering a plea of guilty or nolo contendere should be advised." The district court in this case made no mention of restitution until the sentencing hearing, more than two months after accepting the guilty plea. Corn pleaded guilty to the contempt charge, therefore, without any prior notice that he might be ordered to pay restitution. Under these circumstances, the district court erred in accepting his plea.

The Fourth Circuit as well as a district court in that circuit have vacated restitution orders or remanded for resentencing without restitution because the defendant pleaded without prior notice of the possibility of restitution;[17] the Eighth and Ninth Circuits have done so because restitution was outside the scope of the plea agreement;[18] and the Third, Seventh, and Ninth Circuits have affirmed guilty pleas and restitution orders only upon finding that the defendants had received notice of the possibility of restitution before finally entering their pleas.[19] In all of these decisions but the Fourth Circuit decision in *Hawthorne*, the courts were reviewing guilty pleas entered *before* the August 1, 1985, effective date of the amendment to Rule 11(c)(1) requiring admonition as to restitution. If the unamended rule required notice, then, *a fortiori*, the amended rule requires notice.

■ The government counters that Corn has waived his right to complain about the absence of notice of the possibility of restitution because he failed to object when the district court first indicated that it might

---

16. 18 U.S.C. § 401 (1982).

17. *United States v. Hawthorne,* 806 F.2d 493, 497–501 (4th Cir.1986); *United States v. Lott,* 630 F.Supp. 611, 612–13 (E.D.Va.1986), *aff'd,* 795 F.2d 82 (4th Cir.1986).

18. *United States v. Whitney,* 785 F.2d 824 (9th Cir.1986); *United States v. Runck,* 601 F.2d 968, 969–70 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *see also United States v. Garcia,* 698 F.2d 31, 35–37 (1st Cir.1983).

19. *United States v. Grewal,* 825 F.2d 220, 222 (9th Cir.1987); *United States v. Mischler,* 787 F.2d 240, 244 (7th Cir.1986); *United States v. Woods,* 775 F.2d 82, 85–87 (3d Cir.1985).

order restitution. The Seventh Circuit recently addressed this issue in two sentences: "House [the defendant] contends that the district court should have informed him of the possibility of restitution before accepting his plea. He did not present this claim to the district court, however, and it is too late now."[20] It is impossible for us to decide whether, in an identical case, we would follow this abrupt statement for the proceedings leading to House's procedural default are unclear on the face of the Seventh Circuit opinion. The record in this case, however, warrants a different result.

The district court never mentioned restitution until the sentencing hearing, two months after Corn had already entered his plea without full knowledge of the direct consequences. At sentencing the district court announced, "I am going to order that restitution be made to the extent that it may be determined after a presentation of evidence as to what restitution should be made." Corn might reasonably have anticipated that the district court would hold a hearing for the "presentation of evidence" on restitution and decided to reserve his objections until that time. The court, however, held no subsequent hearing. Three months after allocution, the government submitted a statement showing the losses of each investor. Four months after that the court ordered restitution based solely on the government's evidence. Although Corn had an opportunity to object to the imposition of restitution, and even to file a motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(d), at any time between the sentencing hearing and the court's final order of restitution more than seven months later, the record presents no obvious point at which the defendant should have objected but failed to do so. Under these circumstances, we do not find a waiver of the protection afforded by the express commandment of Rule 11.

■ Corn's challenge, moreover, involves a purely legal question which, if overlooked, would result in a miscarriage of justice.[21] In *United States v. Velasquez*, this circuit applied this standard to review, for the first time on appeal, a defendant's claim that the district court had not complied at sentencing with the procedures mandated by Federal Rule of Criminal Procedure 32(c)(3)(D).[22] Following *Velasquez*, we hold that whether the district court complied with the express provisions of Rule 11(c)(1) constitutes a purely legal question that must be answered in the negative on the undisputed facts in this record. To overlook the error would result in a miscarriage of justice by subjecting Corn to a sentence about which he was not adequately warned at the time of the plea.

■ Citing *United States v. Fentress*,[23] the government next contends that the district court's failure to warn Corn about the possibility of restitution was harmless under Rule 11(h) and therefore not ground for reversal.[24] In *Fentress*, the Fourth Circuit affirmed a district court's order of restitution in the amount of $38,000 even though the district court had failed to warn the defendant that he might be ordered to pay restitution as a condition of probation.[25] The court of appeals deemed the error harmless because Fentress knew at the time he made his plea that he might be subject to fines of up to $40,000, an amount greater than the restitution he was ordered to pay. Thus his sentence was no greater than he had been led to expect.[26]

An analogous argument is possible here: the court told Corn that it could sentence

**20.** *United States v. House*, 808 F.2d 508, 512 (7th Cir.1986).

**21.** *United States v. Velasquez*, 748 F.2d 972, 973 (5th Cir.1984); *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1549 (5th Cir. 1984).

**22.** *Cf. United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. Unit B 1981).

**23.** 792 F.2d 461, 465 (4th Cir.1986).

**24.** Fed.R.Crim.P. 11(h) provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

**25.** *See* 18 U.S.C. § 3651.

**26.** *Fentress*, 792 F.2d at 466.

him however it saw fit; the plea agreement stated that the court could impose a fine in any amount. Yet we hold these general statements insufficient to have put Corn on notice that he might be ordered to pay more than $6,000,000 restitution. Indeed, the imposition of a restitution order in so large an amount, without explicit prior notice of the possibility of restitution, could scarcely be deemed either harmless or not to affect the defendant's substantial rights.[27] Fentress, moreover, was sentenced before the effective date of the 1985 amendment to Rule 11(c)(1) which for the first time required explicit admonition about restitution.[28]

■ Courts considering the validity of guilty pleas entered without prior notice of the possibility of restitution have usually simply vacated the restitution order or permitted resentencing without the possibility of restitution.[29] Most of these cases, however, involved restitution orders imposed as a condition of probation under 18 U.S.C. § 3651 rather than as an integral part of the sentence under 18 U.S.C. §§ 3579–3580, as in this case. Because the district court may have considered the restitution order essential to the sentence, we remand and give the district court the option either to resentence Corn without ordering him to pay restitution or to permit withdrawal of his guilty plea, allowing the government to re-prosecute him if it sees fit.[30]

### IV.

■ One issue fully briefed by the parties will arise again if the district court allows Corn to withdraw his plea and he is again convicted and subject to a restitution order. The district court ordered Corn to reimburse every investor who lost money in the Beard energy scheme. Corn was active in the Beard Energy Group from approximately September 1, 1982, to December 31, 1983. The Victim and Witness Protection Act, authorizing restitution as part of sentencing, became effective on January 1, 1983.[31]

The circuits are divided on the question whether a court may order a defendant to pay restitution under the Victim and Witness Protection Act to victims who incurred losses as a result of offenses committed before the effective date. The Sixth and Eleventh Circuits hold that a unitary conspiracy or scheme to defraud, continuing beyond January 1, 1983, triggers the restitution provisions so that a court may order compensation for all the victims of the scheme.[32] The Fourth and Third Circuits hold that a court may order restitution under the Act only for losses occurring after January 1, 1983.[33]

We follow the rule of *Oldaker* and *Martin*, although we focus on the time at which the criminal acts were committed rather than on the time at which the losses occurred. Before the effective date of the Act, a court could order restitution only as a condition of probation.[34] The Act "expand[ed] current law by authorizing an order of restitution independent of a condition of probation, thereby permitting its use in conjunction with imprisonment, fine, suspended sentence, or other sentence imposed by the court."[35] Because the Act thus increased the punishment applicable to crimes like Corn's, the application of the statute to acts committed before its effective date raises a problem under the clause

**27.** *See Hawthorne,* 806 F.2d at 498; *Runck,* 601 F.2d at 970; *Lott,* 630 F.Supp. at 613.

**28.** *Fentress,* 792 F.2d at 465.

**29.** *See supra* notes 17 and 18.

**30.** *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

**31.** *See* 18 U.S.C.A. § 3579–3580 (1982) (Historical Notes).

**32.** *United States v. Purther,* 823 F.2d 965, 968 (6th Cir.1987); *United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987).

**33.** *United States v. Oldaker,* 823 F.2d 778, 781–82 (4th Cir.1987); *United States v. Martin,* 788 F.2d 184, 188–89 (3d Cir.1986).

**34.** 18 U.S.C. § 3651 (1982).

**35.** S.Rep. No. 532, 97th Cong., 2d Sess. 32 (1982), U.S.Code Cong. & Admin.News 1982, pp. 2515, 2538.

of the Constitution forbidding Congress to pass *"ex post facto* Law[s]." [36] It is axiomatic that courts should interpret statutes so as to avoid conflict with the Constitution.[37] We hold, therefore, that the Act permits a sentence requiring restitution only of losses resulting from criminal acts committed after January 1, 1983. When the defendant's offense is a unitary conspiracy or scheme to defraud, the government must identify which losses resulted from acts committed before and which from acts committed after the effective date for the purposes of restitution under the Victim and Witness Protection Act.

For the foregoing reasons, we REMAND to the district court with instructions to resentence Corn without ordering restitution or to allow him to withdraw his plea. If, after trial or repleading, Corn is again sentenced to pay restitution under the Victim and Witness Protection Act, the court may order compensation only for those losses resulting from criminal acts committed after January 1, 1983.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

Civil Action File No. H–77–1048

SECURITIES AND EXCHANGE COMMISSION, Plaintiff

v.

JAMES EDWARD HOLLENSWORTH, INDIVIDUALLY AND D/B/A HOLLENSWORTH OIL COMPANY GARY CORN

(Filed August 2, 1977)

ORDER OF PERMANENT INJUNCTION BY CONSENT

IT APPEARING to the Court that the defendant GARY CORN, without admitting or denying any of the allegations on the plaintiff's Complaint, has stipulated and consented to the entry of a permanent injunction as prayed for in plaintiff's Complaint enjoining said defendant from engaging in acts or practices which constitute or will constitute violations of Section 5(a), 5(c) and 17(a) of the Securities Act of 1933, as amended [15 U.S.C. 77e(a), 77e(c) and 77q(a) ] and Section 10(b) of the Securities Exchange Act of 1934, as amended [15 U.S.C. 78j(b) ] and Rule 10b–5 thereunder [17 CFR 240.10b–5] and the Court being fully advised in the premises:

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant, GARY CORN, his agents, servants, employees, attorneys, successors and assigns, and each of them, be and hereby are permanently enjoined from, directly or indirectly:

(a) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell securities, namely, fractional undivided working interests in oil and gas leases offered by JAMES EDWARD HOLLENSWORTH, doing business as HOLLENSWORTH OIL COMPANY, or any other securities, through the use or medium of any prospectus or otherwise unless and until a registration statement has been filed with the Securities and Exchange Commission as to such securities, or while a registration statement filed with the Securities and Exchange Commission as to such securities is the subject of a refusal order or stop order of the Securities and Exchange Commission or (prior to the effective date of a registration statement) any public proceedings or examination under Section 8 of the Securities Act of 1933, as amended [15 U.S.C. 77h];

(b) Making use of any· instrument of transportation or communication in interstate commerce or of the mails to sell securities, namely, fractional undivided

---

**36.** U.S. Const. art. I, § 9, cl. 3. *See also Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2450–53, 96 L.Ed.2d 351 (1987).

**37.** *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

working interests in oil and gas leases offered by JAMES EDWARD HOLLENSWORTH doing business as HOLLENSWORTH OIL COMPANY, or any other securities, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities;

(c) Carrying such securities or causing them to be carried through the mails or in interstate commerce by any means or instruments or transportation for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities;

provided however, that nothing in the foregoing portion of this Order shall apply to any securities which are not required to be registered under Section 5 of the Securities Act of 1933, as amended [15 U.S.C. 77e].

IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendant, CARY CORN, his agents, servants, employees, attorneys, successors and assigns, and each of them, be and hereby are, permanently enjoined from, directly or indirectly, in connection with the offer, purchase or sale of securities, namely, fractional undivided working interests in oil and gas leases offered by JAMES EDWARD HOLLENSWORTH doing business as HOLLENSWORTH OIL COMPANY or any other securities, by the use of the mails or any means of instrumentalities of interstate commerce:

(a) Employing any manipulative or deceptive device, scheme or artifice to defraud;

(b) Making untrue statements of material facts or omitting to state material facts necessary to be stated in order to make the statements made, in the light of the circumstances under which they are make, not misleading, concerning but not limited to the following:

(1) The background, experience and financial condition of HOLLENSWORTH OIL COMPANY and HOLLENSWORTH;

(2) The amount of oil and gas produced by wells drilled by the issuer;

(3) The income which could be expected from an investment in securities being offered by the issuer;

(4) The use of proceeds of the offering; or any other statements of similar purport or object;

(5) The degree of risk involved in investments in fractional undivided working interests in oil and gas leases; and,

(6) The period of time in which an investor may expect to receive a return of his original capital investment.

(c) Engaging in any transaction, act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED that the attached Stipulation and Consent of the above named defendant is incorporated herein by reference.

IT IS FURTHER ORDERED that a copy of this permanent injunction and the attached Stipulation and Consent be served by U.S. Marshal on the defendant named herein.

IT IS FURTHER ORDERED that this Court will retain jurisdiction of this cause for the purpose of such other and further relief as may be required in the interest of justice and equity and as the Court may deem necessary and proper, and that the above named defendant will remain party to this cause for the purpose of any further proceedings herein.

ENTERED this 2d day of August, 1977.

/s/ WOODROW SEALS
United States District Judge

DAVIS, Circuit Judge, concurring in part, dissenting in part:

I concur in the judgment of the court and in Parts I through III of the opinion. I disagree, however, with the holding of the majority in Part IV that the district court is without authority under the Victim and Witness Protection Act of 1982 (Act) to require Corn to make restitution to his victims for losses they suffered as a result of Corn's activity before January 1, 1983.

The key to resolving this issue is determining the date of Corn's offense, because the Act provides that it shall apply to *"offenses* occurring on or after January 1, 1983."  Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, § 9(b)(2), 96 Stat. 1248, 1258 (1982) (emphasis added.)

Corn's conviction for the single offense of contempt resulted from sales of unregistered securities he made both before the effective date of the Act—January 1, 1983 —and after that date.  The conduct throughout this period violated the court's order.  In analyzing when the offense occurred for purposes of the Act, I agree with the majority that Corn's continuing conduct is analogous to a continuing conspiracy or scheme to defraud.

Four other circuits have considered when the offense occurs for purposes of the Act in continuing conspiracy or fraud cases.[1]  I agree with the position taken by the Sixth and Eleventh Circuits on this issue.  In cases of continuing conspiracy or schemes to defraud they hold that if the conduct began before the effective date of the Act, and continued after that date, the offense is subject to the provisions of the Act.[2]

Professors LaFave and Scott in their hornbook on criminal law consider the problem of determining the date of an offense for ex post facto purposes and they reach a conclusion consistent with that of the Sixth and Eleventh Circuits:

> The problem of determining the date of the offense for ex post facto purposes may also be present when the offense is of a continuing nature, as with an ongoing conspiracy or where the offense is defined in terms of allowing a certain condition to continue or is based upon omissions by the defendant.  If the conduct, condition, or failure to act continues after the enactment or amendment of the statute in question, this statute

may be applied without violating the ex post facto prohibition.  Thus, a statute increasing the penalty with respect to a conspiracy may be applied to a conspiracy which commenced prior to but was carried on and continued beyond the effective date of the new act.

W. Lafave &. A. Scott, *Criminal Law* 94 (1972).

Because I conclude that the Act authorizes the district court to order Corn to make restitution to his victims for losses caused by Corn's conduct both before January 1, 1983 and thereafter, I respectfully dissent from the contrary conclusion of the majority.

---

1.  *United States v. Oldaker,* 823 F.2d 778, 781–82 (4th Cir.1987); *United States v. Martin,* 788 F.2d 184, 188–89 (3d Cir.1986); *United States v. Purther,* 823 F.2d 965, 968 (6th Cir.1987); *United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987).

2.  *United States v. Purther,* 823 F.2d 965, 968 (6th Cir.1987); *United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987).