**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 5, 2012

No. 10-20703

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SIDNEY BERLE BALDON, II,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
4:07-CR-00279-1

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Sidney Berle Baldon, II, pled guilty to violation of 18 U.S.C. § 371 by evading federal fuel excise taxes. At rearraignment, the district court failed to inform him of the court's authority to order restitution as required by Rule 11(b)(1)(K) of the Federal Rules of Criminal Procedure. The district court subsequently ordered Baldon to pay $3.3 million in restitution. On appeal, Baldon contends that the district court's failure to comply with Rule 11 constitutes reversible error. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20703

**I**

Baldon, with the help of codefendant Tracy Diamond, avoided paying excise taxes by representing to a Louisiana fuel producer that fuel purchased from the producer was to be exported out of the country. Rather than export the fuel, Baldon and Diamond transported the fuel to the Houston area, where it was blended with additional materials at the direction of codefendant Yousef Abuteir. The Defendants also avoided taxes on the new fuel mixture. Abuteir then sold the fuel to Houston area retailers at reduced rates.

A grand jury subsequently indicted Baldon, Diamond, and Abuteir for conspiracy to defraud the government, in violation of 18 U.S.C. § 371, by evasion of federal fuel excise taxes ("Count 1"), and for tax evasion, in violation of 26 U.S.C. § 7201 ("Counts 2-9"). Baldon entered into a plea agreement, pursuant to which he pled guilty to Count 1, agreed to make a complete financial disclosure and cooperate fully in further investigation, waived his right to appeal, and waived his right to post-conviction relief. In return, the Government dismissed Counts 2-9 and agreed not to oppose efforts by Baldon to reduce his total offense level.

At rearraignment, the district court informed Baldon that it could fine him up to $250,000, but failed to inform him of its authority to order restitution, as required by Federal Rule of Criminal Procedure 11. *See* FED. R. CRIM. P. 11(b)(1)(K) ("Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the court's authority to order restitution . . . ."). However, Baldon did not object to the district court's failure to do so. Neither did Baldon object to the pre-sentence report's ("PSR") recommendation that the district court order Baldon to pay over

No. 10-20703

$3.3 million in restitution, or to the final sentence which adopted the PSR's recommendations.

Baldon requested permission to file an out-of-time appeal pursuant to 28 U.S.C. § 2255, and the district court granted him leave to do so. Baldon appealed and now requests that this court reduce the restitution amount to the $250,000 fine mentioned by the district court at rearraignment, or alternatively that this court vacate his guilty plea.

## II

When an appellant has not preserved a Rule 11 error by timely objection, the plain-error standard of Rule 52(b) applies. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004); FED. R. CRIM. P. 52(b). Baldon must therefore show that the district court's error affected his "substantial rights," which requires demonstrating a "reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 76. In answering this question of probability, we look at the entire record. *See United States v. Vonn*, 535 U.S. 55, 59 (2002) ("[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."). However, even if Baldon shows a reasonable probability that his plea would have been different, "relief on plain error review is in the discretion of the reviewing court," and Baldon "has the further burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 63 (internal quotation marks omitted).

Baldon contends that, because the restitution award (approximately $3.3 million) was so much larger than the fine announced at rearraignment ($250,000), there is a reasonable probability that he would not have plead guilty if the court had informed him of its authority to order restitution and the "probable quantum thereof." *See United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) ("[F]ailure of the district court to notify the defendant as to the

quantum of mandatory restitution . . . could be harmful error when the quantum of that restitution exceeds the liability amount used by the court in notifying the defendant as to the consequences of his guilty plea."). We are unpersuaded by Baldon's argument.

As an initial matter, it is not clear that Rule 11 requires the district court to advise a defendant as to the "probable quantum" of restitution. Although the purpose of Rule 11 is to ensure a defendant's plea decision is fully informed, its plain text merely requires the court to inform a defendant of its authority to order restitution, not necessarily of how large such a restitution order may be. Furthermore, the *Powell* court's suggestion that Rule 11 requires more than its plain language was dicta—the court ultimately affirmed the district court, concluding that its Rule 11 error was harmless. *See id.* at 372. In any event, we conclude for the following reasons that Baldon has not met the burden of plain error review, his arguments regarding "probable quantum" notwithstanding.

Baldon's primary contention is that this court's decision in *United States v. Glinsey*, 209 F.3d 386 (5th Cir. 2000), controls. In *Glinsey*, the defendant argued that the district court committed reversible Rule 11 error by failing to advise him in open court of its authority to order restitution. The *Glinsey* court reduced the restitution award ($1.266 million) to the amount of the fine ($1 million) of which Glinsey had been advised. *Id.* at 395. The court reasoned that "Glinsey [was] not prejudiced so long as his liability does not exceed the maximum amount that the court informed him could be imposed as a fine." *Id.* Baldon contends that this court should follow *Glinsey* and reduce restitution to the amount of the fine. We conclude that *Glinsey* does not control for the simple reason that the *Glinsey* court never actually reached the "substantial rights" question of whether the defendant's plea would have been different. *Id.* at 395 ("Even *assuming* that the roughly $266,000 difference *might* have affected his decision to plead guilty, the judgment need not be vacated. We may reduce the

order of restitution to $1 million, an amount that does not infringe his substantial rights." (emphasis added)).  *Glinsey* stands for the proposition that a restitution award *less than or equal to* the amount announced at rearraignment *does not* affect a defendant's substantial rights.  It does not, as Baldon suggests, stand for the proposition that a restitution amount *above* the amount announced at rearraignment necessarily *does* affect substantial rights.

The question of substantial rights was left unanswered by *Glinsey*.  This court's decisions in *United States v. Maharaj*, 176 F. App'x 536 (5th Cir. 2006), and *United States v. Imeh*, 291 F. App'x 637 (5th Cir. 2008), contain  the appropriate analysis, one which is consistent with the Supreme Court's instruction in *Vonn* that we consider the entire record.  *Vonn*, 535 U.S. at 59.  In *Maharaj* and *Imeh*, the defendants contended that the district courts' failure to inform them of their authority to order restitution affected the defendants' substantial rights.  The *Maharaj* and *Imeh* courts considered several factors, including (1) the difference between the maximum possible fine of which the defendant was advised at rearraignment and the total amount of restitution and fines imposed by the district court at sentencing; (2) whether the plea agreement advised the defendant of the court's authority to order restitution and, if so, whether the defendant acknowledged that he had read and understood the plea agreement during the rearraignment; and (3) whether the defendant was jointly and severally liable with codefendants for making restitution.  *See Imeh*, 291 F. App'x at 641-42 & n.3; *Maharaj*, 176 F. App'x at 539.

We examine each of these factors in turn.  First, Baldon is correct that the difference between the fine announced at rearraignment and the amount of restitution clearly distinguishes this case from *Maharaj* and *Imeh*.  In those cases, the differences came to approximately $100,000 and approximately $169,000, respectively.  *See Imeh*, 291 F. App'x at 642 n.3 (listing both amounts).  The difference in the present case is approximately $3 million—more than thirty

times greater than the difference in *Maharaj* and approximately seventeen times greater than the difference in *Imeh*. However, as to the second factor, the plea agreement in this case contemplated restitution in several places, and Baldon acknowledged at rearriagnment that he had read and understood the plea agreement. Baldon contends that the plea agreement's mentions of restitution were insufficient to inform him of the court's authority to order restitution, but after reviewing Baldon's plea agreement and comparing it with the substantially similar plea agreements in *Maharaj* and *Imeh*, we disagree. Moreover, the district court held Baldon jointly and severally liable with Diamond and Abuteir for the restitution payment. As to this factor, we note that the *Maharaj* court's rationale that joint and several liability "decreases the likelihood that [the defendant] would be held personally responsible for payments in excess of $250,000" is not as appropriate in the instant scenario—there is still a high probability, joint and several liability notwithstanding, that Baldon will be liable for more than $250,000. Nevertheless, joint and several liability does serve to reduce Baldon's personal liability and counsels in favor of affirmance. Thus, the *Maharaj* and *Imeh* factors at most tentatively suggest that the district court's Rule 11 error did not affect Baldon's substantial rights.

But beyond the *Maharaj* and *Imeh* factors, the "entire record" suggests that Baldon's substantial rights are unaffected by the error. Specifically, the PSR and the judge's statements at the sentencing hearing both referenced the exact amount of restitution, and Baldon did not object. Baldon acknowledges the multiple references to restitution, but contends that, if in addition to all of this information the court had stated to him at rearraignment that it had the authority to order restitution, his plea decision would have been different. We see no reason to conclude that this addition would have been determinative in Baldon's decision process. Baldon was aware of the possibility of restitution before he signed the plea agreement, and Baldon was aware of the exact amount

No. 10-20703

of restitution prior to sentencing and did not object. These facts together suggest that Baldon's decision to plead guilty was an informed one.

Alternatively, because we are reviewing for plain error, even if Baldon has shown a reasonable probability that his plea would have been different, we may still decline to reverse the district court judgment. *See Vonn*, 535 U.S. at 63 ("[A] defendant has the further burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings."). Baldon invokes *United States v. Corn*, 836 F.2d 889 (5th Cir. 1988), for the proposition that failure to correct the Rule 11 error would result in a "miscarriage of justice." *See id.* at 894. In *Corn*, the district court did not inform the defendant of its authority to order restitution, and this court reversed and remanded, even though the defendant had failed to object at trial. *Id.* at 896. However, *Corn* is distinguishable—"[t]he district court never mentioned restitution until the sentencing hearing, two months after Corn had already entered his plea without full knowledge of the direct consequences." *Id.* at 894. This is not the case with Baldon. The plea agreement quite clearly mentioned the possibility of restitution, as did the PSR. Baldon's failure on multiple occasions to object to the court's statements regarding not only its authority to order restitution, but also the exact amount of impending restitution, suggests the district court's error does not jeopardize the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, we conclude that, even if Baldon has shown a reasonable probability that his plea would have been different absent Rule 11 error, Baldon has not shown that the error warrants reversal under plain error review.

### III

In conclusion, we hold that Baldon has not shown a reasonable probability that, but for the district court's failure to inform him of its authority to order restitution, he would not have entered a guilty plea. The references to

No. 10-20703

restitution in the plea agreement, in the PSR, and at the sentencing hearing all indicate that Baldon was aware of the possibility and probable amount of restitution. Alternatively, we find that the district court's error does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, we AFFIRM the judgment of the district court.